[Cite as *Callentine v. Mill Invests.*, 2017-Ohio-8634.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| FRANCIS EUGENE CALLENTINE | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. William B. Hoffman, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2017 AP 06 0014 |
| MILL INVESTMENTS, LLC, ET AL | : |  |
|  | : |  |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Civil appeal from the Tuscarawas County
                                  Court of Common Pleas, Case No. 2016
                                  CT 06 0416



JUDGMENT:                         Affirmed



DATE OF JUDGMENT ENTRY:           November 17, 2017



APPEARANCES:


For Plaintiff-Appellant                   For Defendants-Appellees

STEVEN BRIAN                              TIMOTHY YAHNER/EDWARD DARK
81 Maplecrest Street S.W.                 3873 Cleveland Road
North Canton, OH  44720                   Wooster, OH 44691

*Gwin, J.*

{¶1} Appellant appeals the May 4, 2017 judgment entry of the Tuscarawas County Court of Common Pleas granting appellees' motion for summary judgment.

*Facts & Procedural History*

{¶2} On June 16, 2016, appellant Francis Callentine filed a complaint against appellee Mill Investments, LLC, appellee Michael Kitchen ("Kitchen"), and William Walsh ("Walsh"). Mill Investments leased the property located at 118 East First Street in Uhrichsville to Joi and Cecil (Andy) Brown. Appellant alleged in his complaint that on November 9, 2012, when he was an invitee at 118 East First Street, he tripped and fell on an uneven porch and sidewalk. Appellant averred appellees were negligent by: creating a dangerous, hazardous, and latent peril upon the premises; subjecting him to a hidden danger and risk of injury known to appellees, but not reasonably discoverable by appellant; failing to warn appellant of a hazard known to appellees; failing to exercise reasonable care; and failing to maintain and keep the premises in good repair and free from nuisance.

{¶3} Walsh filed a motion for summary judgment on October 11, 2016. Walsh stated he had not been affiliated with Mill Investments since 2002, when he transferred his entire ownership interest. The trial court granted summary judgment to Walsh on November 2, 2016.

{¶4} Mill Investments and Kitchen filed a motion for summary judgment on February 14, 2017. Appellees alleged two doctrines barred appellant's negligence complaint: the two-inch rule and the step-in-the-dark rule. Further, appellees argued there was no evidence they had actual or constructive notice of the defect. Attached to

the motion for summary judgment were the depositions and attached exhibits of Joi Brown, Cecil Brown, Kitchen, and appellant. Also attached to the motion for summary judgment was the affidavit of Phyllis Paul ("Paul"). Paul averred she took the photographs labelled Exhibits A and B, and she measured the deviation in height between the concrete slabs. Further, that at no point did the deviation in height depicted in Exhibits A and B equal or exceed two inches. The photographs show two concrete slabs and a tape measure showing the deviation in height of the concrete slabs is less than two inches.

{¶5} Joi Brown stated in her deposition that she has lived at 118 East First Street in Uhrichsville for approximately five years. She lived at the home on November 9, 2012 and had moved into the residence approximately six months prior. She is a lifelong friend of appellant. Joi testified she was not home when appellant fell, but arrived home immediately after he fell; appellant told her he was stepping down and fell. She confirmed Exhibit J is a lease agreement she and her husband have with Mill Investments. Joi testified she was not aware of any problems with the porch or walkway to cause her any concern. She never made any complaints to appellees that there was any problem with the porch or walkway, or that it was dangerous or defective. She never called appellees regarding the walkway or porch, and neither did her husband. Joi denied that anyone else had fallen at that location.

{¶6} Cecil Brown stated in his deposition that, prior to November 9, 2012, appellant had been to the house once or twice before. On November 9, 2012, appellant arrived at dusk. Cecil did not see appellant fall. Cecil stated no one, including him or his wife, complained to appellees about the walkway. Cecil testified no one fell prior to

appellant in that area. However, down the way, a couple people fell by the front porch because it was icy.

{¶7} In his deposition, Kitchen stated the lease indicates the landlord is responsible for repairs. Thus, if a problem is not caused by normal wear and tear, it would be the responsibility of Mill Investments to repair and problem and Mill Investments would be responsible for the costs of the repair. Kitchen stated that before he leases a property, he generally examines it to make sure it is in good condition. He walks through, makes sure the fixtures (heating, cooling, electric, water) function property. Kitchen does this examination of the property himself. Kitchen testified if there is a tenant living in a rental property, he may drive past the property every few months, but would not go inside unless there was a problem or complaint. Kitchen stated the back porch of the property at issue looked like Exhibit G when he bought the property in 2011.

{¶8} When asked if the sidewalk looked like this with the height deviation prior to November 9, 2012, Kitchen stated, "Yes. I mean I don't – I would think so. I would assume so; I don't know." Kitchen continued, "I'm sure I walked over it several times without noticing there was a crack or elevation problem there. I am sure I walked over before, during, and after that time." Kitchen did not attempt to repair the sidewalk. Kitchen testified that neither the Browns nor any previous tenant made a request of him to repair the sidewalk. Prior to November 9, 2012, Kitchen had not been to the property since May of 2012. Kitchen stated there have been no repairs made to the back porch since November 9, 2012. As to the unevenness of the concrete, Kitchen testified he walked past it, several tenants walked past it, it caused him no concerns, and he did not notice the unevenness.

{¶9}    Appellant testified during his deposition that he went to 118 East First Street in Uhrichsville because his friend put in a new woodshop in his garage and wanted him to see it.  Appellant arrived at 4:00 p.m. or 5:00 p.m. in the evening, and it was daylight when he arrived.    Appellant stated the incident occurred, "a few hours after," approximately two or three hours after, although appellant did not know the exact time.  Appellant testified it was dark out when the incident occurred.

{¶10}   When appellant arrived at the home, he got out of his car and walked up to the porch via the steps and knocked on the back door.  After Andy (what appellant called Cecil Brown) answered the back door, they went back down the steps and straight to the garage to look at Andy's woodshop.  After exiting the woodshop, appellant and Andy walked back up onto the porch and went in the house, where Andy showed him around and where Joi, Andy, and appellant sat and talked.  Appellant knows he spent a couple of hours there, as it was daylight when he arrived at the house and dark when he left.  Appellant does not think it was raining or snowing that day and he believes the sidewalk was shoveled, but does not remember if there was snow on the ground.  Appellant testified he was not distracted by anything when he stepped down.  Appellant stated the cause of his fall was stepping into an uneven area.

{¶11}   Appellant testified he exited the house via the same door he came in, which was the back door.  When he left the house, he stepped off the porch, stepped down, rolled his ankle, and snapped his foot.  Due to the pain, he jumped in the air and flipped, coming down on his elbow, smashing his elbow into the sidewalk.  Appellant stated that as he was exiting the door, it was dark outside.  He thinks there may have been a porch

light, but he does not know if it is was on when he left.  However, even if it was on, it did not illuminate the area where he was walking.

{¶12}  Appellant stated he could see the porch, but there was a shadow over the sidewalk.  Appellant marked on Exhibit G where he was standing on the porch right before he stepped down.  Appellant does not remember what he was looking at when he stepped down, although he thought it might be stained or marbleized.  Appellant testified he had no problem seeing the porch when he went into the house.  However, he did not see the step or the elevation as he exited the house because of the shadow.  Appellant stated the whole sidewalk was dark about from halfway back to the porch and was obscured because of shadows.  When asked, "had there been sufficient lighting would you have been able to see the difference in elevation of the two abutting pieces of the sidewalk," appellant responded, "Yes, I would have never stepped there."  Appellant testified that had he looked down and seen the difference in elevation, he would have stepped somewhere else.  However, he could not tell it was uneven.

{¶13}  Appellant testified Joi Brown told him that both she and her son tripped over the sidewalk.  No one told appellant they complained to appellees about the porch or sidewalk.  Appellant has no idea how long this condition existed.  Appellant also testified he has no idea if the area where he fell violated any kind of building, health, housing, or safety codes.  Appellant spent the remainder of the deposition detailing his injuries and treatment.

{¶14}  Appellant filed a memorandum in opposition to appellees' motion for summary judgment on March 8, 2017.  Appellant argued that while appellees did not have actual notice of the defect, they should have known about the defect because Kitchen

inspected the property before November 9, 2012.  Further, that a determination about whether a condition is open and obvious is fact-specific.  Finally, appellant conceded that the elevation difference was less than two inches, but argued the difference was "substantial" and the two-inch rule is not "negligence by ruler."

{¶15}  Appellees filed a reply to their motion for summary judgment on March 13, 2017.

{¶16}  The trial court issued a judgment entry on May 4, 2017.  The trial court found as follows:  appellant had been in the area of the porch and walkway several times prior to his fall during the same visit; appellant was injured when he stepped off the porch onto the walkway below where two pieces of uneven sidewalk met, with one portion elevated higher than the other portion; there was no indication anyone complained about the porch or walk to appellees or requested repairs prior to appellant's fall; and appellant testified it was dark and there was a shadow over the sidewalk at the time of his fall and thus he did not see the rise in the sidewalk.

{¶17}  The trial court found there was no evidence to suggest the uneven elevation was more than an insubstantial imperfection.  Further, that appellant presented no evidence the area where he fell violated any building or safety codes.  The trial court found the condition of the walkway, including the darkness or shadow at the time of appellant's fall, was open and obvious. Additionally, that appellant was not distracted by anything when he stepped off the porch, and there were no factors other than the elevation of the sidewalk and the darkness that contributed to appellant's fall.  The trial court found there were no attendant circumstances at the time of appellant's fall to preclude summary judgment.

{¶18} The trial court also specifically referenced appellant's testimony that he could not see clearly where he was stepping before he stepped off the porch and testimony that if he had looked down and seen the difference in elevation, he would have stepped somewhere else. The trial court found reasonable minds can only conclude appellant's negligence in stepping into darkness without further investigation as to what the darkness or shadow might conceal was greater than any alleged negligence of appellees.

{¶19} The trial court found appellees were entitled to judgment as a matter of law and granted appellees' motion for summary judgment.

{¶20} Appellant appeals the May 4, 2017 judgment entry of the Tuscarawas County Court of Common Pleas and assigns the following as error:

{¶21} "I. THE TRIAL COURT ERRED IN FINDING THAT THERE IS NO EVIDENCE IN THE RECORD TO SUGGEST THAT THE UNEVEN ELEVATION OF THE RELEVANT SECTIONS OF THE SUBJECT SIDEWALK WAS MORE THAN AN INSUBSTANTIAL IMPERFECTION.

{¶22} "II. THE TRIAL COURT ERRED IN FINDING THAT THE CONDITION OF THE WALKWAY, INCLUDING THE DARKNESS OR SHADOW PRESENT AT THE TIME OF PLAINTIFF'S FALL, WAS OPEN AND OBVIOUS.

{¶23} "III. THE TRIAL COURT ERRED IN FINDING THAT REASONABLE MINDS COULD ONLY CONCLUDE THAT PLAINTIFF'S NEGLIGENCE WAS GREATER THAN ANY ALLEGED NEGLIGENCE OF DEFENDANTS."

*Summary Judgment Standard*

**{¶24}** Civil Rule 56(C) in reviewing a motion for summary judgment which provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**{¶25}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 474

N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶26} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

{¶27} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle*, 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist. 1991).

I.

{¶28} In his first assignment of error, appellant argues the trial court erred in finding the "two-inch" rule or the "trivial imperfection rule" bars recovery in this case. Appellant contends that, even though the elevation difference was less than two inches, the difference was still "substantial" and the two-inch rule is not a bright-line test, but depends on the circumstances.

{¶29} The Ohio Supreme Court has declined to hold property owners and occupiers liable as a matter of law for injuries due to minor or trivial imperfections that were not unreasonably dangerous, are commonly encountered, and to be expected. In *Kimball v. Cincinnati*, 5 Ohio St.2d 60, 213 N.E.2d 734 (1953), the Ohio Supreme Court held that a height variation in pavement levels less than two inches is a slight defect as a matter of law that precludes a finding of negligence. In *Helms v. American Legion, Inc.*, 5 Ohio St.2d 60, 213 N.E.2d 734 (1966), the Ohio Supreme Court reaffirmed its holding in *Kimball* and extended the two-inch rule to privately owned or occupied properties.

{¶30} In *Cash v. Cincinnati*, 66 Ohio St.2d 319, 421 N.E.2d 1275 (1981), the Ohio Supreme Court again reviewed the two-inch rule. The Court clarified the two-inch rule and stated courts must also consider any attendant circumstances in determining whether liability exists for trivial defects. Thus, in *Cash*, the Ohio Supreme Court established that a height difference of two inches or less is insubstantial as a matter of law, unless attendant circumstances are shown to elevate the defect to an unreasonably dangerous condition. *Id.*

{¶31} There is no precise definition of attendant circumstances. *Mulcahy v. Best Buy Stores, LP*, 5th Dist. Delaware No. 13CAE060051, 2014-Ohio-1163. Attendant circumstances are factors that contribute to a fall and are beyond the injured person's control. *Id.* The analysis of attendant circumstances also uses an objective test and the court should not consider the particular actions of the parties in the case. *Id.* Attendant circumstances do not include any circumstances existing at the moment of a fall, unless the individual was distracted by an unusual circumstance created by the property owner. *Id.*

**{¶32}** In this case, there is no dispute the elevation between the two pieces of sidewalk was less than two inches. Appellant conceded in his brief in opposition to appellees' motion for summary judgment the elevation difference was less than two inches. Further, appellant identified the elevation difference as the cause of his fall in Exhibit G, which measured at under two inches (Exhibit A, Exhibit B, and Affidavit of Phyllis Paul).

**{¶33}** While appellant is correct that the two-inch rule is not a "bright-line" test, the other circumstances to consider that may elevate the defect to an unreasonably dangerous condition are attendant circumstances. However, appellant did not testify to any attendant circumstances and did not direct the trial court or this Court to any attendant circumstances. Rather, appellant testified it was not raining or snowing, he had no problem seeing the step when he entered the house, and he was not distracted by anything when he fell. Accordingly, we find reasonable minds could only conclude the defect was trivial and was not rendered a substantial one because of any attendant circumstances. See *Carpenter v. Mount Vernon Gateway, Ltd.*, 5th Dist. Knox No. 13CA6, 2014-Ohio-465 (granting summary judgment based on the trivial defect doctrine when the defect was 1.5 inches deep and there was nothing diverting the plaintiff's attention when she walked); *Galo v. Carron Asphalt Paving, Inc.*, 9th Dist. Lorain No. 08CA009374, 2008-Ohio-5001 (finding as a matter of law a 1.5 inch difference in height was trivial when the plaintiff testified if she had looked down, she would have seen the ridge).

{¶34} Appellant's first assignment of error is overruled. The trial court properly applied the trivial defect rule to bar appellant's negligence claim, as no duty exists where an alleged defect is minor or insubstantial. *Id.*

## II. & III.

{¶35} In his second and third assignments of error, appellant contends the trial court erred in finding the condition of the walkway, including the shadow or darkness, was open and obvious and in finding his negligence was greater than that of appellees. However, in the body of his brief addressing these assignments of error, appellant argues reasonable minds may find appellees breached their duty to appellant as an invitee. Specifically, that appellees should have known of the elevated concrete slab and that the question of open and obvious is fact-specific.

{¶36} The trial court applied the step-in-the dark rule in conjunction with the open and obvious doctrine in this case and found the darkness of the walkway was open and obvious, and that appellant's negligence in stepping into darkness without further investigation as to what the darkness or shadow might conceal was greater than any alleged negligence of appellees. Appellant does not specifically address the step-in-the-dark rule in his brief, but does argue the open and obvious doctrine is fact-specific and should be determined on a case-by-case basis.

{¶37} An invitee is defined as a person who rightfully enters and remains on the premises of another at the express or implied invitation of the owner and for a purpose beneficial to the owner. *Mulcahy v. Best Buy Stores, Inc.*, 5th Dist. Delaware No. 14CAE060051, 2014-Ohio-1163. The owner or occupier of the premises owes an invitee a duty to exercise ordinary care to maintain its premises in a reasonably safe condition,

such that an invitee will not unreasonably or unnecessarily be exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 480 N.E.2d 474 (1985). A premises owner must warn its invitees of latent or concealed dangers if the owner knows or has reason to know of the hidden dangers. *Jackson v. Kings Island*, 58 Ohio St.2d 357, 390 N.E.2d 810 (1979).

{¶38} However, a premises owner is not an insurer of its invitees' safety against all forms of accidents that may happen. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 480 N.E.2d 474 (1985). Under Ohio law, a business owner owes no duty to protect an invitee from dangers that are known to the invitee or are so obvious and apparent to the invitee that he or she may be reasonably expected to discover them and protect him or her against them. *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968). In *Armstrong v. Best Buy Co., Inc.*, the Ohio Supreme Court found that a premises owner owes no duty to persons entering the premises regarding dangers that are open and obvious. 99 Ohio St.3d 79, 788 N.E.2d 1088 (2003). The rationale of this doctrine is that the open and obvious nature of the hazard itself serves as a warning, so that owners reasonably may expect their invitees to discover the hazard and take appropriate measures to protect themselves against it. *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 597 N.E.2d 504 (1992).

{¶39} When considering whether a condition is open and obvious, the court must consider the nature of the condition itself, not the plaintiff's conduct in encountering the condition. *Jacobsen v. Coon Restoration & Sealants, Inc.*, 5th Dist. Stark No. 2011-CA—00001, 2011-Ohio-3563. However, the dangerous condition at issue does not actually have to be observed by the plaintiff to be an open and obvious condition under the law.

*Kraft v. Johnny Biggs Mansfield LLC*, 5th Dist. Richland No. 2012 CA 0068, 2012-Ohio-5502.  The determinative question is whether the condition is observable.  *Id.*  The open and obvious doctrine applies to common law premises liability even when it involves claims against a landlord.  *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195.  When applicable, the open and obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims.  *Bovetsky v. Marc Glassman, Inc.*, 5th Dist. Stark No. 2016CA00122, 2016-Ohio-7863.

**{¶40}**  In most situations, whether a danger is open and obvious presents a question of law.  *Aycock v. Sandy Valley Church of God*, 5th Dist. Tuscarawas No. 2006 AP 09 0054, 2008-Ohio-105.  Though the determination of the existence of and the obviousness of a danger alleged to exist requires a review of the facts of the case, where only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious may be decided by a court as a matter of law.  *Id.*

**{¶41}**  An exception to the open and obvious doctrine is the existence of attendant circumstances.  *Id.*  For this exception to apply, an attendant circumstance must divert the attention of the injured party, significantly enhance the danger of the defect, and contribute to the injury.  *Bovetsky v. Marc Glassman, Inc.*, 5th Dist. Stark No. 2016CA00122, 2016-Ohio-7863.  However, as detailed above, appellant did not testify to any attendant circumstances and did not direct the trial court or this Court to any attendant circumstances.  Rather, appellant testified it was not raining or snowing, he had no problem seeing the step when he entered the house, and he was not distracted by anything when he fell.  Accordingly, there was nothing to divert the attention of appellant, significantly enhance the danger of the defect, or contribute to the injury.

**{¶42}** Appellant cites two cases in support of his argument that the open and obvious doctrine is an extremely factual inquiry and should not be decided via summary judgment. However, we find the cases cited by appellant distinguishable from this case.

**{¶43}** In *Carpenter v. Marc Glassman, Inc.*, the Eighth District found reasonable minds could differ on whether a display platform in a store was open and obvious and whether the plaintiff knew of its danger or may reasonably have been expected to discover it and protect against it, given that the platform she tripped on was movable, filled with merchandise, and given that the plaintiff's view had been blocked by a movable display rack filled with merchandise. 124 Ohio App.3d 236, 705 N.E.2d 1281 (1997). In *Klauss v. Marc Glassman, Inc.*, the Eighth District found reasonable minds could differ as to whether the hazard was open and obvious when the view of the pallet plaintiff tripped on was obscured by a bench and merchandise. 8th Dist. Cuyahoga No. 84799, 2005-Ohio-1306. In this case, there was not a movable display rack or bench/merchandise blocking the hazard. Rather, appellant testified he could have seen the elevation if there had been sufficient lighting and that he saw the elevation when he previously traversed the porch hours earlier.

**{¶44}** We find this case is analogous to those cases finding no genuine issue of material fact exists, particularly the case of *Tomasko v. Sohnly*, 5th Dist. Delaware No. 15-CAE-10-0078, 2016-Ohio-2698, in which we found summary judgment appropriate where the plaintiff was aware it was dark, but she went onto the balcony anyway and testified if she had stepped out onto the balcony in daylight, she would have appreciated the height of the step. See also, *Aycock v. Sandy Valley Church of God,* 5th Dist. Tuscarawas No. 2006 AP 09 0054, 2008-Ohio-105 (finding no genuine issue of material

fact exists as to whether the elevation of the porch was open and obvious when the plaintiff testified he observed the height elevation between the porch and the cars passing by); *Bovetsky v. Marc Glassman, Inc.*, 5th Dist. Stark No. 2016CA00122, 2016-Ohio-7863 (holding reasonable minds could only conclude the height difference between the sidewalk and parking lot was open and obvious when the plaintiff testified the elevation was noticeable if she had looked).

{¶45} In conjunction with the open and obvious rule, the trial court also applied the step-in-the-dark rule. Appellant alleges the darkness contributed to his fall. This Court has previously held that "darkness is always a warning of danger, and may not be disregarded." *Aycock v. Sandy Valley Church of God*, 5th Dist. Tuscarawas No. 2006 AP 09 0054, 2008-Ohio-105 (finding the argument that the porch was dimly lit, making the elevation unperceivable, to be unpersuasive). The step-in-the dark-rule holds generally that one who, from a lighted area, steps into darkness without "knowledge, information, or investigation as to what darkness might conceal, is guilty of contributory negligence as a matter of law." *Tomasko v. Sohnly*, 5th Dist. Delaware No. 15-CAE-10-0078, 2016-Ohio-2698, quoting *Hissong v. Miller*, 186 Ohio App.3d 345, 2010-Ohio-961, 927 N.E.2d 1161 (2nd Dist.); *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 344 N.E.2d 334 (1976); *Jeswald v. Hutt*, 15 Ohio St.2d 224, 239 N.E.2d 37 (1968).

{¶46} The rationale behind the rule is "grounded in the idea that darkness is nature's own warning to arouse the natural instinct of self-preservation." *Id.* Thus, because "darkness is a warning, for one's own protection, it may not be disregarded and if one does unreasonably disregard the darkness, she may be precluded from recovering damages for resulting injuries." *Id.* Such a disregard of darkness may preclude the

recovery of damages for personal injuries when the plaintiff is chargeable with negligence which was a direct and contributing cause of her misfortune. *Jeswald v. Hutt*, 15 Ohio St.2d 224, 239 N.E.2d 37 (1968).

{¶47} The trial court found appellant was contributorily negligent when he intentionally stepped from the lighted area to the area in darkness and concluded this negligence was a bar to recovery and that the condition of the walkway, including the darkness or shadow, was open and obvious. We agree with the trial court.

{¶48} Appellant stated he arrived when it was daylight. However, he testified the incident occurred when it was dark, it was dark when he left the house, and, when he was exiting the door, it was dark outside. Appellant testified there may have been a porch light at the home. However, he was not sure it was on when he left the house. Further, even if it was on when he left the house, it did not illuminate the area where he was walking.

{¶49} Appellant had the opportunity to view the elevation difference in ample light several times, as he first navigated the back porch when he arrived and knocked on the door, again when he went into the garage with Mr. Brown, and a third time when they returned to the house via the back porch. Appellant stated he had no problem seeing the porch and the elevation difference when he went into the house or when he went to the door the first time prior to going to the garage. Appellant testified he did not see the elevation when he left the house because of the shadow and that the whole sidewalk was dark and obscured from halfway back the porch.

{¶50} When appellant was asked, "had you looked down and seen the difference in elevation, would you have stepped there, or stepped somewhere else," he responded,

"I would have stepped somewhere else." Finally, when appellant was asked, "had there been sufficient lighting out there would you have been able to see the difference in elevation of the two abutting pieces of the sidewalk," appellant testified, "Yes, I would never have stepped there."

**{¶51}** Accordingly, we find reasonable minds could only conclude appellees owed no duty to warn appellant pursuant to the open and obvious doctrine and appellant was contributorily negligent when he intentionally stepped from the lighted area to the area in darkness. Thus, appellant's claims are barred by the open and obvious doctrine, in conjunction with the step-in-the-dark doctrine.

**{¶52}** Appellant spends the remaining portion of his brief arguing that there is a genuine issue of material fact as to whether appellees breached a duty owed to appellant because the record establishes appellees should have known of the concrete slab. Appellant contends that since Kitchen inspected the property prior to November 9, 2012, he should have known about the hidden danger posed by the elevation difference. However, as detailed above, both the trivial imperfection rule and the step-in-the-dark rule in conjunction with the open and obvious rule bar appellant's recovery as appellees owed no duty to warn appellant of the elevation.

**{¶53}** Further, under both R.C. 5321.04 ("Landlord Obligations") and common law negligence, a landlord is excused from liability "if he neither knew nor should have known of the factual circumstances that caused the violation." *Sikora v. Wenzel*, 88 Ohio St.3d 493, 727 N.E.2d 1277 (2000). In the absence of actual or constructive knowledge, a landlord is not liable. *Id.*

**{¶54}** It is undisputed that appellees did not have actual knowledge of the height deviation. Appellant testified no one told him they complained to appellees about the porch or sidewalk. Mrs. Brown and Mr. Brown testified they did not complain to appellees about the porch or the sidewalk. Kitchen testified that neither the Browns nor any previous tenant made a request of him to repair the sidewalk.

**{¶55}** As such, appellant must demonstrative constructive knowledge in order to succeed on his claim. In order to charge appellees with constructive knowledge, "it must appear that such nuisance exited in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger." *Beebe v. Toledo*, 168 Ohio St. 203, 151 N.E.2d 738 (1958). In this case, appellant testified he had no idea how long the alleged defect existed. Kitchen testified he and tenants walked over the sidewalk several times without noticing an elevation problem. Further, that when he walked past it, it caused him no concerns. Appellant did not present any testimony or evidence to dispute Kitchen's assessment of the elevation or any evidence as to how long the unevenness existed. Accordingly, we find there is no genuine issue of material fact as to whether appellees had constructive notice of the alleged hazard. See *Maynard v. Winters*, 5th Dist. Tuscarawas No. 2012 AP 05 0035, 2012-Ohio-6286, *Au v. Waldman*, 5th Dist. Richland No. 2010 CA 112, 2011-Ohio-2233. Appellant's second and third assignments of error are overruled.

**{¶56}** Based on the foregoing, appellant's assignments of errors are overruled.

{¶57} The May 4, 2017 judgment entry of the Tuscarawas County Court of Common Pleas is affirmed.

By Gwin,  J.,

Delaney P.J., and

Hoffman, J., concur