[Cite as *McLaughlin v. Andy's Coin Laundries, L.L.C.*, 2018-Ohio-1798.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| SETH MCLAUGHLIN, | : | APPEAL NO. C-170198 |
| and | | TRIAL NO. A-1600791 |
| | : | |
| LISA MCLAUGHLIN, | | *O P I N I O N.* |
| | : | |
| Plaintiffs-Appellants, | | |
| | : | |
| vs. | | |
| | : | |
| ANDY'S COIN LAUNDRIES, LLC, | : | |
| DEXTER LAUNDRY, INC., | : | |
| DEXTER FINANCIAL SERVICES, INC., | : | |
| CENTURY LAUNDRY DISTRIBUTING, INC., | : | |
| and | : | |
| ROBERTSHAW CONTROLS COMPANY, INC., | : | |
| Defendants-Appellees. | : | |


Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 9, 2018

*Bieser, Greer & Landis, LLP, James H. Greer* and *Christina M. Flanagan*, for Plaintiffs-Appellants,

*Stephen A. Bailey*, for Defendant-Appellee Andy's Coin Laundries, LLC,

*Isaac Wiles Burkholder & Teetor, LLC*, *William B. Benson* and *Mark C. Melko*, for Defendants-Appellees Dexter Laundry, Inc., Dexter Financial Services, Inc., Century Laundry Distributing, Inc., and Robertshaw Controls Company, Inc.

**MYERS, Presiding Judge.**

{¶1} Plaintiffs-appellants Seth and Lisa McLaughlin appeal from the trial court's entry granting summary judgment to defendants-appellees Andy's Coin Laundries, Inc., ("Andy's") Dexter Laundry, Inc., Dexter Financial Services, Inc., Century Laundry Distributing, Inc., (collectively referred to as "Dexter") and Robertshaw Controls Company, Inc., ("Robertshaw") on the McLaughlins' claims for negligence, products liability, spoliation, and loss of consortium.

{¶2} Finding no merit to the McLaughlins' argument that the trial court's grant of summary judgment was in error, we affirm the trial court's judgment.

### Factual Background

{¶3} On October 14, 2014, Seth McLaughlin took a comforter to a laundromat owned by Andy's. McLaughlin placed the comforter and detergent inside a front-loading washing machine, inserted coins into the machine, and initiated a wash cycle. Approximately 20 minutes later, McLaughlin noticed that the machine was still in the wash phase of the cycle and that a display on the front of the machine was flashing the message "F-10." Through the clear door on the front of the machine, McLaughlin could see that the machine contained sudsy water and that its drum continued to slowly rotate as the error message flashed. McLaughlin inserted more coins into the machine, but the error message remained. Unaware of what an "F-10" error was, McLaughlin sought help from two other patrons in the laundromat, Anthony Jones and Sharon Gill. Jones and Gill both regularly frequented Andy's laundromat, but neither had ever seen that particular error message.

{¶4} McLaughlin, Jones, and Gill attempted to push the machine's emergency stop button numerous times, but the machine continued to spin and its door remained locked. McLaughlin noticed that a sign on the wall contained a telephone number, and he asked Jones and Gill if he should call the listed number. After they told him that he would not get a response and would be forced to leave a voicemail, he elected not to call. Jones told McLaughlin that he had seen other patrons "pop open" washing machine doors when a machine malfunctioned, and he offered to retrieve a screwdriver from his car and use it to open the locked door of the machine. McLaughlin agreed to Jones's suggestion. Jones retrieved the screwdriver and used it to pry open the machine door.

{¶5} The machine's drum continued to spin after Jones opened the door, although no water or suds spilled out. McLaughlin waited one to two minutes while the machine spun, and then, believing he could safely remove the comforter, used his left hand to grab a part of it that had started to come out of the machine. The comforter was wet and heavy. After losing his grip, McLaughlin reached into the machine and grabbed the comforter with his right hand. The comforter began to wrap around McLaughlin's arm up to his elbow, and his arm was pulled into the machine as the drum continued to turn. McLaughlin felt what he described as a "violent pop" as his wrist was crushed and disconnected internally from his arm. Unable to free himself, he shouted for help. Jones pulled McLaughlin out of the machine.

{¶6} As a result of the accident, McLaughlin's hand was amputated at the wrist.

{¶7} The front of the washing machine bore a warning label that read, "Warning. Risk of serious injury. Do not try to open door when: the drum is still turning; you see water in the window; any cycle light is still on." The warning further stated, "If power is interrupted, there will be a 2 to 3 minute delay before the door can be opened." The warning label also contained an image of a reaching hand, with a line crossing out the hand, indicating that users should not place their hands in a moving machine. In his deposition, McLaughlin did not dispute the presence of the warning label, but testified that he did not recall seeing it on the machine.

{¶8} The washing machine used by McLaughlin was manufactured, financed, and sold by Dexter. Robertshaw had manufactured the machine's control panel.

{¶9} Seth and Lisa McLaughlin filed suit against Andy's, Dexter, and Robertshaw, asserting claims for negligence, products liability, spoliation, and loss of consortium. All defendants filed motions for summary judgment, which were granted by the trial court.

### Summary Judgment

{¶10} In one assignment of error, the McLaughlins argue that the trial court erred in granting summary judgment to all defendants on all claims for relief.

{¶11} We review a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriately granted when there exists no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party,

permits only one reasonable conclusion that is adverse to that party. *State ex rel. Howard v. Ferreri,* 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

### 1. Negligence

{¶12} The McLaughlins asserted a negligence claim against Andy's alleging that Andy's owed a duty to Seth McLaughlin as a business invitee to maintain its facility in a reasonably safe condition. They argued that Andy's breached that duty by failing to maintain the washing machine at issue in a reasonably safe condition and by failing to provide an on-site personnel or telephone number with a live representative to assist patrons, which forced McLaughlin to resort to self-help to retrieve his comforter.

{¶13} Andy's argues that summary judgment was appropriately granted on the negligence claim because the open and obvious danger posed by the rotating drum in the washing machine obviated any duty of care owed to McLaughlin. The McLaughlins contend that an issue of fact exists as to whether the danger posed by the washing machine was open and obvious.

{¶14} A business owner owes its invitees a duty to maintain the premises in a reasonably safe condition. *Esterman v. Speedway LLC*, 1st Dist. Hamilton No. C-140287, 2015-Ohio-659, ¶ 6. But "[w]here a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 11, quoting *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, syllabus. Invitees are reasonably expected to discover and protect themselves against such dangers. *Esterman* at ¶ 6. An open and obvious danger is one that is not "hidden, concealed from view, or undiscoverable upon ordinary

inspection." *Id.* at ¶ 7, quoting *Thompson v. Ohio State Univ. Physicians, Inc.,* 10th Dist. Franklin No. 10AP-612, 2011-Ohio-2270, ¶ 12.

{¶15} Typically, whether a danger is open and obvious is a question of law. *Callentine v. Mill Invests., LLC*, 5th Dist. Tuscarawas No. 2017 AP 06 0014, 2017-Ohio-8634, ¶ 40. But the presence of attendant circumstances can create an issue of fact. *Esterman* at ¶ 11. Attendant circumstances are "distractions that contribute to an injury by diverting the attention of the injured party and reduce the degree of care an ordinary person would exercise at the time." *Galinari v. Koop*, 12th Dist. Clermont No. CA2006-10-086, 2007-Ohio-4540, ¶ 21.

{¶16} Here, the rotating drum posed an open and obvious danger. It was not hidden or concealed, and it was immediately apparent by looking at the machine. Moreover, the machine contained a warning label alerting a user to the danger posed by the rotating drum. The record contains no evidence of attendant circumstances that would have diverted McLaughlin's attention and created an issue of fact as to whether the danger was open and obvious. To the contrary, McLaughlin was aware that the drum was rotating for a period of time before he elected to reach inside the machine. And he knowingly permitted the washing machine door to be forced open with a screwdriver in order for him to do so.

{¶17} Because the danger posed by the rotating washing machine was open and obvious, Andy's owed no duty of care to McLaughlin to protect him from such danger, and the trial court did not err in granting summary judgment on the McLaughlins' claim for negligence.

## 2. *Products Liability*

{¶18} The McLaughlins allege two types of products liability claims against Dexter and Robertshaw: defective design and failure to warn.

{¶19} According to the McLaughlins' expert Richard Marzola, the washing machine was defective in design because: the door lock mechanism could easily be forced open; the drum failed to stop turning when the machine's door was opened; the emergency stop button failed to work, and the drum continued to rotate for several minutes, when the machine was in "F-10" error mode; and there was a communication error between the machine's control panel and variable frequency drive resulting in a stop command being issued but not received and the drum continuing to rotate.

{¶20} The McLaughlins asserted that Dexter failed to provide a warning about what an "F-10" error meant and failed to warn consumers that the emergency stop button would not work when the machine was in "F-10" error mode.

{¶21} To prevail on a products liability claim against a manufacturer, a plaintiff must establish that: (1) the product was defective in manufacture or construction, was defective in design or formulation, was defective due to an inadequate warning, or was defective because it did not conform to a manufacturer's representation; (2) the defective aspect of the product was a proximate cause of the harm to the plaintiff; and (3) the manufacturer designed, formulated, produced, constructed, created, assembled or rebuilt the actual product that caused the harm. R.C. 2307.73(A).

{¶22} Summary judgment is appropriately granted to a manufacturer on a products liability claim when "the plaintiff uses the product 'in a capacity which is

clearly unforeseeable by the manufacturer and completely incompatible with the product's design.' " *Aldridge v. Reckart Equip. Co.*, 4th Dist. Gallia No. 04CA17, 2006-Ohio-4964, ¶ 90, quoting *Welch Sand & Gravel Inc. v. O and K Trojan, Inc.*, 107 Ohio App.3d 218, 225, 668 N.E.2d 529 (1st Dist.1995). " 'Misuse' of a product suggests a use which was unanticipated or unexpected by the product manufacturer, or unforeseeable and unanticipated." *Markus v. SICO, Inc.*, 8th Dist. Cuyahoga No. 74060, 1999 WL 304520, *4 (May 13, 1999).

{¶23} Dexter and Robertshaw contend that McLaughlin misused the washing machine in an unforeseeable manner when he allowed Jones to force open the machine door with a screwdriver, thus bypassing the safety lock, and then inserted his own hand into the rotating drum. The McLaughlins counter that use of the washing machine in this manner was foreseeable.

{¶24} To support their claim of foreseeability, the McLaughlins offered the expert testimony of Lawrence Larsen. Larsen had worked in the laundromat business for approximately 40 years. Larsen testified during his deposition that it was common knowledge in the laundromat industry that patrons would try to pry a machine door open to retrieve their belongings from a malfunctioning machine.

{¶25} Larsen explained that he had worked with three engineers from Dexter in the late 1980s in connection with the design of a washing machine, and that his discussions with the Dexter employees included how the door lock mechanism was often damaged by persons trying to pry open the door when the machine failed. He testified that those Dexter employees were aware that people had tried to pry open the doors to Dexter machines. But he later clarified that the Dexter employees had no knowledge of any prior incidents in which a person had pried open a door and

9

reached into a washing machine while the drum was rotating. To distinguish these two actions, Larsen testified that "opening a door while the machine is running is not as frequent as someone attempting to pry the door open and breaking the door handle. That's a fairly common thing. Prying it open with a screwdriver or pry bar while the machine is running is not as popular." When asked further about laundromat patrons attempting self-help to retrieve their belongings, Larsen additionally stated, "I don't recall a particular incident in which the drum was still moving," and "[n]ormally it's done at the end of the cycle and the door won't open."

{¶26} During depositions conducted by the McLaughlins, multiple Dexter employees were asked if they knew whether the doors to Dexter's washing machines had ever been forced open by laundromat patrons. Blake Carnahan, an electrical production engineer for Dexter, testified that after McLaughlin's accident, he inspected the washing machine that McLaughlin had used. During the inspection, he noticed scratch marks around the door on various machines at Andy's. But he testified that he had never before seen that type of damage, and that he had no prior knowledge that consumers used screwdrivers or other instruments to pry open locked washing machine doors at laundromats.

{¶27} Ron Stearns, a Dexter electrical engineer, acknowledged that laundromat patrons may resort to self-help if a machine malfunctions and there is no attendant on duty or emergency number to call. But Stearns testified that he had never been informed that customers had opened locked machines to retrieve their belongings.

{¶28} Steve Cardis, a former product engineer with Dexter who had been present during an inspection of the machine that injured McLaughlin, testified that

he saw marks on several washing machines at Andy's purportedly caused by patrons attempting to open locked washing machine doors. Cardis testified that he was surprised by this evidence of tampering as he had never heard of it occurring before at a laundromat. Dexter service technician Bradley Millard likewise testified that he had never heard of a laundromat patron using a screwdriver to open a locked washing machine.

{¶29} The undisputed testimony from all Dexter employees was that they had no prior knowledge of consumers prying open a washing machine door when the drum was still rotating and then inserting their hand into the rotating drum.

{¶30} Testimony from the McLaughlin's own expert, Richard Marzola, corroborated that offered by the Dexter employees. Marzola testified that he had seen clear evidence of damage around the door handle on washing machines at Andy's, but that he had seen nothing in the testimony that he had reviewed to indicate that Dexter had knowledge that people had been tampering with its machines in such a manner.

{¶31} The acts of forcing open a locked washing machine door with a screwdriver while the machine's drum was visibly rotating and still contained water, and then reaching into the rotating machine drum, constituted misuse of the product. Such actions, which included the purposeful disabling of a safety device on the machine, were completely incompatible with the product's design. *See Aldridge*, 4th Dist. Gallia No. 04CA17, 2006-Ohio-4964, at ¶ 90. And following our review of the record, we find that no Dexter employees had prior knowledge of this misuse and that this misuse was not foreseeable.

{¶32} In the absence of any genuine issue of material fact as to whether McLaughlin had misused the washing machine in an unforeseeable manner, we hold that the trial court did not err in granting summary to the defendants on the McLaughlins' products liability claims.

### 3.   Spoliation

{¶33}  The McLaughlins asserted a claim for spoliation against Andy's.  They allege in a footnote that the trial court erred in granting summary judgment on the spoliation claim.

{¶34}  Because the McLaughlin's failed to separately argue this issue in their brief, we disregard it.  App.R. 12(A)(2); *See Thomas v. Cohr, Inc.*, 197 Ohio App.3d 145, 2011-Ohio-5916, 966 N.E.2d 915, ¶ 4 (1st Dist.).

### 4.   Loss of Consortium

{¶35}  The McLaughlins argue that the trial court erred in granting summary judgment on Lisa McLaughlin's claim for loss of consortium.  The loss-of-consortium claim was derivative of the other claims asserted by the McLaughlins and cannot stand independently.  *See Colegrove v. Fred A. Nemann Co.*, 1st Dist. Hamilton No. C-140171, 2015-Ohio-533, ¶ 30.  Because we have determined that the trial court properly granted summary judgment on all other claims, we hold that summary judgment was appropriately granted on the loss-of-consortium claim.

### Conclusion

{¶36}  Having found no error in the trial court's grant of summary judgment to the defendants, we overrule the sole assignment of error and affirm the judgment of the trial court.

**Judgment affirmed.**

**DETERS, J.,** concurs.
**MILLER, J.,** concurs separately.

**MILLER, J.,** concurring separately.

{¶37}  I concur wholeheartedly in affirming summary judgment in favor of Andy's on the premises liability claims because the danger of the rotating drum was open and obvious.  I also concur in affirming summary judgment in favor of Dexter and Robertshaw on the product liability claim, but on a different basis.

{¶38}  I would find, at a minimum, a question of fact regarding whether McLaughlin's misuse was foreseeable.  The anecdotal testimony about Dexter employees not being personally aware of a similar prior injury is inconsequential. The question is whether the misuse was foreseeable, not unprecedented or even unreasonable.  *Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St.3d 470, 476, 575 N.E.2d 416 (1991); *see Eastman v. Stanley Works*, 180 Ohio App.3d 844, 2009-Ohio-634, 907 N.E.2d 768, ¶ 43 (10th Dist.).  Here the washing machine carried a label warning against opening the door while the drum is turning.  The label also warned against reaching into a rotating drum.  Thus, it is impossible to conclude on summary judgment that Dexter did not foresee the very actions that it warned against.  Foresight of the exact method of opening the door—using a screwdriver as a lever—is less important than foreseeing that someone would try to open the door. And most critically, regardless of how a door came to be open—be it by user action, part failure, or otherwise, Dexter unquestionably foresaw and warned against the possibility of a person reaching into a rotating machine, which was the method of injury.  Accordingly, I would not affirm summary judgment on the theory of the misuse being unforeseen.

{¶39} However, these same facts would allow for the judgment to be affirmed on the basis of assumption of the risk. A person is said to have assumed the risk of his actions when he consents to or acquiesces in an appreciated or known risk. *Anderson v. Ceccardi,* 6 Ohio St.3d 110, 112, 451 N.E.2d 780 (1983). "The practicalities of proof require that the defense of assumption of the risk also be applicable where the risk is so obvious that the plaintiff must have known and appreciated it." *Id.* The elements of assumption of the risk are "the plaintiff knew of the condition, the condition was patently dangerous, and the plaintiff voluntarily exposed himself or herself to the condition." *Carrell v. Allied Product Corp.,* 78 Ohio St.3d 284, 289, 677 N.E.2d 795 (1997). McLaughlin unquestionably knew that the drum was rotating and the door was open—satisfying the first element. On the premises liability claim, we recognize that the danger of the rotating drum was open and obvious, which is equivalent to patently dangerous. The second element was also met. As for the third element, McLaughlin testified that he watched the machine for a minute or two waiting for it to stop. He also attempted to retrieve the comforter by pulling on a portion of it that had fallen out the open door. Only after that first attempt failed did McLaughlin fatefully reach into the machine. Thus, McLaughlin voluntarily exposed himself to the condition, satisfying the third element. Based upon these facts, one must conclude that the risk was so obvious that McLaughlin assumed the risk. Accordingly, I concur in the affirmance.

Please note:
      The court has recorded its own entry on the date of the release of this opinion.