[Cite as *State ex rel. Hare v. Russell*, 2022-Ohio-1932.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, EX REL. BRANDON HARE, | : | CASE NO. C-210344 |
| Relator, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| THE HONORABLE HEATHER S. RUSSELL, | : | |
| Respondent. | : | |

Original Action in Prohibition

Judgment of the Court: Writ of Prohibition Granted

Date of Judgment Entry on Appeal:  June 8, 2022

*Raymond T. Faller,* Hamilton County Public Defender, and *Krista M. Gieske,* Assistant Public Defender, for Relator,

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Respondent.

CROUSE, JUDGE.

{¶1}    Relator Brandon Hare was charged with one count of assault for allegedly hitting his ex-girlfriend, Regina Pugh, and pushing her to the ground. The matter proceeded to a bench trial on May 3, 2021, before Respondent Judge Heather S. Russell. There was a disagreement between defense counsel and Judge Russell that led Judge Russell to orally declare a mistrial and recuse herself. On the "Judge's Sheet,"[1] Judge Russell wrote, "Court recuses – rerolls," but did not explain her recusal or state that a mistrial had been declared.

{¶2}    The case was transferred to Judge Gwen Bender. Hare moved to dismiss the assault charge on double-jeopardy grounds. A hearing on the motion to dismiss was held on May 27, 2021. Judge Bender denied the motion, finding that Judge Russell had declared a mistrial because she no longer felt that she could remain fair and impartial toward Hare due to "butting heads" with defense counsel.[2] That same day, the state filed a motion requesting that Judge Russell issue a nunc pro tunc entry "clarifying that a mistrial was declared on this matter." Judge Russell issued a nunc pro tunc entry on June 1, 2021, wherein she wrote on the Judge's Sheet, "Based on defense attorney's statements, the court declares a mistrial, recuses, and requests that the case be re-rolled."

{¶3}    Hare has filed a "verified complaint for writ of prohibition" requesting that this court vacate the June 1, 2021 nunc pro tunc judgment entry entered by Judge Russell, and restrain Judge Russell from entering any further orders related to the

---

[1] *See Cincinnati v. Walker*, 1st Dist. Hamilton No. C-070770, 2008-Ohio-4473, ¶ 5 (explaining the use of the "Judge's Sheet" in Hamilton County Municipal Court).
[2] Hare has filed an appeal of the denial of his motion to dismiss in the appeal numbered C-210321.

case. Respondent filed an answer denying the allegations. Both parties have moved for summary judgment.

### *Summary Judgment*

{¶4}   A petition seeking a writ of prohibition is a civil action and may be resolved on summary judgment. *See State ex rel. New Prospect Baptist Church v. Ruehlman*, 1st Dist. Hamilton No. C-180591, 2019-Ohio-5263, ¶ 8. Summary judgment is appropriate when "there exists no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party." *Collett v. Sharkey*, 1st Dist. Hamilton No. C-200446, 2021-Ohio-2823, ¶ 8.

### *Writ of Prohibition*

{¶5}   "Prohibition is an extraordinary writ issued to prevent a court or tribunal from usurping or exercising judicial power or judicial functions which have not been conferred upon it by law." *State ex rel. Daily Reporter v. Court of Common Pleas of Franklin Cty.*, 56 Ohio St.3d 145, 145, 565 N.E.2d 536 (1990). "The writ of prohibition is a high prerogative writ to be used with great caution in the furtherance of justice and only where there is no other regular, ordinary, and adequate remedy." *State ex rel. Stark v. Summit Cty. Court of Common Pleas*, 31 Ohio St.3d 324, 325, 511 N.E.2d 115 (1987).

{¶6}   To demonstrate entitlement to a writ of prohibition, Hare must establish that "(1) [Judge Russell] is about to or has exercised judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ would result in injury for which no other adequate remedy exists in the ordinary course of law." *See State ex rel. Fiser v. Kolesar*, 164 Ohio St.3d 1, 2020-Ohio-5483,

4

172 N.E.3d 1, ¶ 7, quoting *State ex rel. Balas-Bratton v. Husted*, 138 Ohio St.3d 527, 2014-Ohio-1406, 8 N.E.3d 933, ¶ 15. The second and third elements are satisfied where the relator demonstrates that the lack of jurisdiction is "patent and unambiguous." *Kolesar* at ¶ 7.

**I.      Is Judge Russell about to exercise, or has she exercised, judicial power?**

**{¶7}**      Respondent argues there is no indication that she is about to exercise judicial power in the case. She contends that she issued the nunc pro tunc entry to simply clarify her relinquishment of power in the case.

**{¶8}**      A writ of prohibition is typically used as a preventative tool, but it may be used to vacate prior "jurisdictionally unauthorized actions." *See State ex rel. Stern Pros. Atty. v. Mascio*, 81 Ohio St.3d 297, 298-299, 691 N.E.2d 253 (1998) ("Where an inferior court patently and unambiguously lacks jurisdiction over the cause, prohibition will lie both to prevent the future unauthorized exercise of jurisdiction *and* to correct the results of previous jurisdictionally unauthorized actions." (Emphasis added.)); *State ex rel. Adams v. Gusweiler*, 30 Ohio St.2d 326, 330, 285 N.E.2d 22 (1972) ("a court which has jurisdiction to issue the writ of prohibition as well as the writs of procedendo and mandamus has plenary power, not only to prevent excesses of lower tribunals, but to correct the results thereof and to restore the parties to the same position they occupied before the excesses occurred").

**{¶9}**      Thus, despite the fact that there is no indication that Judge Russell is about to exercise judicial power, a writ of prohibition may still be issued to vacate the June 1, 2021 entry if she lacked jurisdiction to enter it. *See Cummins & Brown, LLC v. Cummins*, 1st Dist. Hamilton No. C-200166, 2021-Ohio-428, ¶ 6 (a reviewing court has inherent authority to vacate void judgments).

**II.    Was Judge Russell's nunc pro tunc entry unauthorized by law?**

{¶10}   "Jurisdiction" refers to three, distinct concepts: "jurisdiction over the subject matter, jurisdiction over the person, and jurisdiction over a particular case." *WBCMT 2007-C33 Office 7870, L.L.C. v. Breakwater Equity Partners, L.L.C.*, 2019-Ohio-3935, 133 N.E.3d 607, ¶ 8 (1st Dist.). Jurisdiction over the case connotes "the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction." *Id.* at ¶ 9. A court's judgment is void when it lacks subject-matter jurisdiction; lack of jurisdiction over the case merely renders the judgment voidable. *Id.* at ¶ 33.

{¶11}   Judge Russell recused herself on May 3 and lost jurisdiction over the case thereafter. Therefore, her June 1 nunc pro tunc entry was voidable, subject to a timely objection. *See Tissue v. Tissue*, 8th Dist. Cuyahoga No. 83708, 2004-Ohio-5968, ¶ 13 ("The voluntary recusal of a judge from a case made all judicial acts by that judge on that case voidable subject to a timely objection."); *Mascio*, 81 Ohio St.3d at 300, 691 N.E.2d 253 (issuing a writ of prohibition holding that all of a judge's orders in the case after his recusal were void and preventing the judge from proceeding in the case until the Chief Justice had ruled on the affidavit of disqualification filed by the relator).

{¶12}   Hare's filing of the complaint for a writ of prohibition 14 days after Judge Russell's nunc pro tunc entry amounted to an objection to Judge Russell's issuance of the nunc pro tunc entry.

{¶13}   Respondent argues that the nunc pro tunc entry related back to May 3 when she orally announced the mistrial and issued a written entry recusing herself. "Because a nunc pro tunc order is an order done 'now for then,' 'by its very nature, it applies retrospectively to the judgment it corrects.' " *In re E.B.,* 1st Dist. Hamilton No.

C-150351, 2016-Ohio-1507, ¶ 10, quoting *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, ¶ 19. However, in *In re E.B.,* this court held that the trial court lacked jurisdiction at the time it issued its first nunc pro tunc entry, and therefore the entry was a nullity. *In re E.B.* at ¶ 6.

{**¶14**} Crim.R. 36 allows the trial court to issue nunc pro tunc entries "at any time," but it would be incorrect to say that Crim.R. 36 confers jurisdiction on a judge when she has none. *See State v. Aarons*, 8th Dist. Cuyahoga No. 110313, 2021-Ohio-3671, ¶ 22 ("although Crim.R. 36 permits a nunc pro tunc entry to be filed 'at any time,' a notice of appeal will divest a trial court of jurisdiction to do so" where the nunc pro tunc entry interferes with appellate jurisdiction). Because Judge Russell lost jurisdiction over the case once she recused herself, she lost the ability to issue *any* further orders in the case, including nunc pro tunc entries. Judge Russell patently and unambiguously lacked jurisdiction to issue the June 1 nunc pro tunc entry.

### III. Would denying the writ result in injury for which no other adequate remedy exists in the ordinary course of law?

{**¶15**} Respondent argues that Hare has an adequate remedy at law through the direct appeal of the denial of his motion to dismiss. Respondent claims that this court can disregard the nunc pro tunc entry when deciding Hare's direct appeal.

{**¶16**} However, there is an exception to the third element. Hare is not required to establish that he has no adequate remedy at law if he demonstrates that Judge Russell patently and unambiguously lacked jurisdiction to issue the nunc pro tunc entry. *See State ex rel. Thomas v. McGinty*, 164 Ohio St.3d 167, 2020-Ohio-5452, 172 N.E.3d 824, ¶ 15; *Gusweiler*, 30 Ohio St.2d at 329, 285 N.E.2d 22 ("If an inferior court is without jurisdiction whatsoever to act, the availability or adequacy of a remedy of appeal to prevent the resulting injustice is immaterial to the exercise of supervisory

jurisdiction by a superior court to prevent usurpation of jurisdiction by the inferior court.").

{¶17} There is a question as to whether this exception relates only to subject-matter jurisdiction, or includes personal jurisdiction and jurisdiction over the case. *See State ex rel. Sponaugle v. Hein*, 2017-Ohio-1210, 87 N.E.3d 722, ¶ 34-43 (2d Dist.) (discussing differing decisions of the Ohio Supreme Court on the matter).

{¶18} Several Ohio Supreme Court decisions have applied the exception only to subject-matter jurisdiction. *See, e.g, Ohio High School Athletic Assn. v. Ruehlman*, 157 Ohio St.3d 296, 2019-Ohio-2845, 136 N.E.3d 436, ¶ 6; *State ex rel. Welt v. Doherty*, Slip Opinion No. 2021-Ohio-3124, ¶ 16.

{¶19} But the Ohio Supreme Court has also applied the exception in cases concerning personal jurisdiction and jurisdiction over the case. *See, e.g., State ex rel. Doe v. Capper*, 132 Ohio St.3d 365, 2012-Ohio-2686, 972 N.E.2d 553, ¶ 15 (granting the writ of prohibition where the trial judge patently and unambiguously lacked personal jurisdiction); *State ex rel. Moir v. Kovack*, 145 Ohio St.3d 175, 2016-Ohio-158, 47 N.E.3d 831, ¶ 25 (holding that the trial judge patently and unambiguously lacked jurisdiction to assign magistrates to the case after she recused herself from the case).

{¶20} In *State ex rel. Durrani v. Ruehlman*, 147 Ohio St.3d 478, 2016-Ohio-7740, 67 N.E.3d 769, ¶ 5, the trial judge, who was not the administrative judge, signed an order prepared for the administrative judge's signature consolidating multiple medical-malpractice cases. The judge then transferred the cases from other judges onto his own docket. *Id*. at ¶ 6. The Ohio Supreme Court granted the writ of prohibition because Judge Ruehlman "patently and unambiguously lacked the authority to order

the consolidation of the underlying malpractice cases." *Id.* at ¶ 28. The court stated, "[T]his case is not about the jurisdiction of the trial court, or even of Judge Ruehlman, to hear the underlying tort cases. Rather, it is about Judge Ruehlman's authority to consolidate the Durrani cases and remove them from the judges to whom they had been assigned * * *." *Id.* at ¶ 24.

{¶21} Limiting the exception to only those cases involving subject-matter jurisdiction would fail to comport with the purpose of the writ of prohibition—to prevent an inferior tribunal from abusing or usurping judicial functions. *State ex rel. Staton v. Common Pleas Court*, 5 Ohio St.2d 17, 20, 213 N.E.2d 164 (1965), citing *State ex rel. Burtzlaff v. Vickery*, 121 Ohio St. 49, 50, 166 N.E. 894 (1929). The "legitimate scope and purpose" of a writ of prohibition "is to keep inferior courts within the limits of their own jurisdiction and to prevent them from encroaching upon the jurisdiction of other tribunals." *Vickery* at 50.

{¶22} By issuing her June 1 entry, Judge Russell usurped the authority of Judge Bender. Because Judge Russell patently and unambiguously lacked jurisdiction over the case, a peremptory writ of prohibition is appropriate.

### *Conclusion*

{¶23} Judge Russell's motion for summary judgment is denied. Hare's motion for summary judgment is granted and a peremptory writ of prohibition is issued. Judge Russell's June 1, 2021 nunc pro tunc entry is vacated and she is hereby restrained from exercising further judicial authority in this case.

Writ granted.

**BERGERON, J.,** concurs.
**MYERS, P.J.,** dissents.

9

**MYERS, P.J.,** dissenting.

{¶24} Because I conclude that this is not the rare case that requires a writ of prohibition, I respectfully dissent. I conclude that a writ of prohibition should not lie because Judge Russell did not patently and unambiguously lack subject-matter jurisdiction over the case, the exercise of her judicial power in issuing a nunc pro tunc entry was not unauthorized by law, and Hare has an adequate remedy at law.

{¶25} Recent Supreme Court of Ohio cases have examined the circumstances under which writs of prohibition should be granted, and have cautioned that they are a rare and extraordinary remedy. The Supreme Court has also recently examined the term "jurisdiction" and given us guidance as to the difference between jurisdiction and authority. This case implicates both concepts.

{¶26} In *Ohio High School Athletic Assn. v. Ruehlman*, 157 Ohio St.3d 296, 2019-Ohio-2845, 136 N.E.3d 436, the Supreme Court of Ohio denied the Ohio High School Athletic Association's ("OHSAA") request for a writ of prohibition against a judge who had issued a temporary restraining order enjoining application of an OHSAA rule. The court began by examining the requirements of extraordinary writs:

> We reserve the use of extraordinary writs for rare cases. A "writ of prohibition is an extraordinary remedy that is granted in limited circumstances with great caution and restraint." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001). "In the absence of a patent and unambiguous lack of jurisdiction, a court having general **subject-matter jurisdiction** can determine its own jurisdiction, and a party contesting that jurisdiction has an adequate remedy by appeal." *State ex rel. Plant v. Cosgrove*, 119 Ohio St.3d 264, 2008-Ohio-3838, 893 N.E.2d 485, ¶ 5. The OHSAA does not contend that it lacks an

adequate remedy at law but, rather, seeks to rely on the narrow exception that allows us to issue a writ of prohibition "where there is a patent and unambiguous lack of **subject matter jurisdiction**." *State ex rel. Ohio Edison Co. v. Parrott*, 73 Ohio St.3d 705, 707, 654 N.E.2d 106 (1995).

(Emphasis added.) *Ruehlman* at ¶ 6.

**{¶27}** The court recognized that in the past, when it had found a patent and unambiguous lack of jurisdiction, it was almost always because a statute explicitly removed jurisdiction. *Id.* at ¶ 9 (delineating cases involving statutes that conferred exclusive jurisdiction for certain matters in particular courts).

**{¶28}** The court then engaged in an analysis of the word "jurisdiction," which it had expanded upon in recent decisions, as discussed below:

In relying on these cases, the OHSAA fails to account for the varying manners in which the word "jurisdiction" has been used. *See* [*Bank of Am., N.A. v.*] *Kutcha*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, at ¶ 18; *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 33. " 'Jurisdiction,' it has been observed, 'is a word of many, too many, meanings.' " *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), quoting *United States v. Vanness*, 85 F.3d 661, 663, 318 U.S. App.D.C. 95 (D.C.Cir.1996), fn.2. The "unspecified use of this polysemic word" often "lead[s] to confusion and has repeatedly required clarification as to which type of 'jurisdiction' is applicable in various legal analyses." *Kutcha* at ¶ 18. Thus, we have made clear, "There is a distinction between a court that lacks subject-matter jurisdiction over a case and a

11

court that improperly exercises that subject-matter jurisdiction once conferred upon it." *Pratts* at ¶ 10.

*Ruehlman* at ¶ 11.

**{¶29}** The court found that the subject matter in the case fell squarely within the jurisdiction granted by the Ohio Constitution and the Ohio Revised Code to the Hamilton County Court of Common Pleas. *Id.* at ¶ 17. Thus, it denied the writ of prohibition. *Id.*

**{¶30}** Less than a year ago, the Supreme Court had another opportunity to examine the meaning of a patent and unambiguous lack of jurisdiction. *In State ex rel. Welt v. Doherty*, Slip Opinion No. 2021-Ohio-3124, a unanimous decision, the court denied a writ of prohibition against a trial court judge. The court reiterated that prohibition will generally lie only for an absence of subject-matter jurisdiction. *Welt* at ¶ 16. It then distinguished subject-matter jurisdiction from jurisdiction over a case:

> We have distinguished a court's subject-matter jurisdiction from a court's "jurisdiction over a particular case." *See Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040. "Subject matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases" and "is determined without regard to the rights of the individual parties involved in a particular case." *Id.* at ¶ 19. A court's jurisdiction over a particular case pertains to "the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction." *Id.*
>
> A party that contests a court's jurisdiction over a particular case does not call into question the subject-matter jurisdiction of the court. *Id.* at ¶ 22-23; *see also State ex rel. Novak, L.L.P. v. Ambrose*, 156 Ohio

St.3d 425, 2019-Ohio-1329, 128 N.E.3d 209, ¶ 12 (when a court possesses general subject-matter jurisdiction, an error in that court's exercise of jurisdiction over a particular case may be appealed).

*Welt* at ¶ 17-18. The Supreme Court affirmed the dismissal of a petition for a writ of prohibition on the ground that the issue raised by the petitioner did not affect the subject-matter jurisdiction of the trial court over such claims, and the petitioner had an adequate remedy by way of appeal. *Id*. at ¶ 15, 20.

{¶31} As the majority points out, in *State ex rel. Durrani v. Ruehlman*, 147 Ohio St.3d 478, 2016-Ohio-7740, 67 N.E.3d 769, ¶ 28, the Supreme Court of Ohio granted a writ of prohibition ordering a trial judge to refrain from taking any further action in cases not originally assigned to him and vacated the judge's order consolidating the cases. The court held that the judge was patently and unambiguously "without jurisdiction to take the actions that he did." *Id*. at ¶ 17.

{¶32} The Supreme Court acknowledged that the trial judge, as a judge of a court of common pleas, "has the general jurisdiction" (subject-matter jurisdiction) to preside over a medical-malpractice case, *id*. at ¶ 19, but held that the judge lacked the "judicial power," *id*. at ¶ 21, and the "authority" under the Rules of Superintendence of the Courts, the Civil Rules, and the Hamilton County Local Rules to transfer the cases to himself from the other judges to whom the cases had originally been assigned or to consolidate the cases. *Id*. at ¶ 26. The court acknowledged the trial judge's argument that local court rules do not establish a court's jurisdiction: "But this case is not about the jurisdiction of the trial court, or even of Judge Ruehlman, to hear the underlying tort cases. Rather, it is about Judge Ruehlman's authority to [consolidate the cases and remove them from their assigned judges]." *Id*. at ¶ 24. I note that this

case, and its uses of the terms "jurisdiction," "judicial power," and "authority," seems to run contrary to the Supreme Court's more recent decisions in *Ruehlman* and *Welt*.

**{¶33}** Finally, in the context of void vs. voidable judgments, the Supreme Court of Ohio has also clarified the concept of jurisdiction. If a specific action is within a court's subject-matter jurisdiction, any error by the court in exercising that jurisdiction renders the court's judgment voidable, not void. *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 26; *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776, ¶ 43.

**{¶34}** Against this background, I examine this case and conclude that this is not the rare case that requires a writ of prohibition. As set forth by the majority, to demonstrate entitlement to a writ of prohibition, Hare must establish that Judge Russell either exercised or is about to exercise judicial or quasi-judicial power, the exercise of that power is unauthorized by law, and a denial of the writ would result in injury for which no other adequate remedy exists in the ordinary course of law. *See* majority opinion at ¶ 6. These latter two elements may be established by showing that Judge Russell patently and unambiguously lacked jurisdiction.

**{¶35}** I would determine that a writ of prohibition should not lie because Judge Russell did not patently and unambiguously lack subject-matter jurisdiction over the case, the exercise of her judicial power in issuing a nunc pro tunc entry was not unauthorized by law, and Hare has an adequate remedy at law.

**{¶36}** First, turning to whether Judge Russell patently and unambiguously lacked subject-matter jurisdiction, there can be no argument that under R.C. 1901.20(A)(1), Judge Russell, as a Hamilton County Municipal Court judge, had subject-matter jurisdiction over this case. In fact, she exercised that jurisdiction without objection, even conducting a trial. And Hare cites to no statute otherwise

denying Judge Russell subject-matter jurisdiction. *See Ruehlman,* 157 Ohio St.3d 296, 2019-Ohio-2845, 136 N.E.3d 436, at ¶ 9-10. While I agree with the majority that once Judge Russell determined she could no longer be fair and recused herself, she generally lost the authority to act any further in the case, I disagree with its conclusion that this means she patently lacked jurisdiction to enter a nunc pro tunc entry.

**{¶37}** The majority relies on *State ex rel. Durrani v. Ruehlman*, 147 Ohio St.3d 478, 2016-Ohio-7740, 67 N.E.3d 769, to hold that even though Judge Russell had subject-matter jurisdiction over the case, she nonetheless patently and unambiguously lacked jurisdiction because her action usurped the authority of Judge Bender. Even if I were persuaded that a court can patently and unambiguously lack jurisdiction while still having subject-matter jurisdiction, which I am not, I would maintain that Judge Russell did not patently and unambiguously lack jurisdiction in this case to enter a nunc pro tunc entry, which related back to a time when she clearly had authority and jurisdiction over the case. In *Durrani*, the Supreme Court of Ohio found that Judge Ruehlman lacked the judicial power to consolidate and reassign all the Durrani cases to himself because his actions violated the Rules of Superintendence, the Civil Rules, and the Hamilton County Local Rules. *Durrani* at ¶ 26. Unlike Judge Ruehlman's actions, the actions of Judge Russell in entering a nunc pro tunc entry were not in violation of any statutes or rules, and she did not lack authority (as discussed in more detail below) to enter the nunc pro tunc order.

**{¶38}** Because I find no patent and unambiguous lack of jurisdiction, I must examine whether Hare is otherwise entitled to a writ of prohibition. In doing so, I find that Judge Russell's exercise of her judicial power to issue a nunc pro tunc entry was not unauthorized by law. Judge Russell believed she was simply entering a nunc pro

15

tunc entry to correct a clerical error or omission to properly reflect her granting of a mistrial.

**{¶39}** The majority concludes that writs of prohibition should lie even where subject-matter jurisdiction exists, so as to prevent an inferior court from usurping a superior court's judicial functions. Majority opinion at ¶ 21. They conclude that "by issuing her June 1 entry, Judge Russell usurped the authority of Judge Bender." However, I conclude that Judge Russell had the authority to put on a proper nunc pro tunc entry and that it applied retroactively to the time that she still had authority over the case.

**{¶40}** Crim.R. 36 provides: "Clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." The majority writes that "it would be incorrect to say that Crim.R. 36 confers jurisdiction on a judge when she has none." Majority opinion at ¶ 14. I agree that the rule does not "confer" jurisdiction. Rather, the rule simply reflects that a court may always correct nonsubstantive omissions in its entries.

**{¶41}** "An order issued 'nunc pro tunc'—Latin for 'now for then'—is defined as '[h]aving retroactive legal effect through a court's inherent power.' " *In re E.B.*, 1st Dist. Hamilton No. C-150351, 2016-Ohio-1507, ¶ 9 (*"E.B. III"*), quoting *Black's Law Dictionary* 1100 (8th Ed.2004). It "must reflect 'what the court actually decided, not what the court might or should have decided or what the court intended to decide.' " *Id.*, quoting *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164, 656 N.E.2d 1288 (1995). It is given retrospective operation.

**{¶42}** The Supreme Court of Ohio has said, "It is well settled that courts possess the authority to correct errors in judgment entries so that the record speaks the truth." *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, ¶ 18.

16

A court may correct a "clerical error, mistake, or omission that is mechanical in nature and apparent on the record[.]" *Id.* " 'It is a simple device by which a court may make its journal speak the truth * * * by correcting a judicial record that fails to show an order or a judgment of the court because the order or judgment was not recorded at all in the first instance.' " *Id.* at ¶ 19, quoting *State v. Breedlove*, 46 Ohio App.3d 78, 81, 546 N.E.2d 420 (1st Dist.1988), quoting *Natl. Life Ins. Co. v. Kohn*, 133 Ohio St. 111, 113, 11 N.E.2d 1020 (1937).

{¶43} In *State v. Lester*, the trial court filed a nunc pro tunc judgment entry that supplemented the wording of the original resentencing entry to add that the defendant's conviction occurred pursuant to a jury trial. *Lester* at ¶ 5. The Supreme Court held that "the sole purpose of the nunc pro tunc entry was to correctly state that the appellant's original conviction was based on a jury verdict, a fact that was obvious to the court and all the parties." *Id.* at ¶ 20. The entry "merely corrected a clerical omission in the resentencing order and made the entry reflect what had already happened, which was appellant's conviction by jury verdict." *Id.* The Supreme Court stated that "[t]he trial court's addition indicating how appellant's conviction was effected affected only the form of the entry and made no substantive changes." *Id.*

{¶44} In this case, Judge Russell stated at the May 3 trial:

You know what? I'm going to recuse from this case. I'm going to call a mistrial because, quite frankly, I don't like you telling me what you have to do and don't have to do. I was politely issuing some suggestions and some guidance. We are not managing very well here -- * * * -- together and so I am calling a mistrial and you can re-roll it.

Looking at what occurred, Judge Russell (1) recused from the case and (2) declared a mistrial because of (3) defense counsel's telling the court what defense counsel had to do and did not have to do, and (4) said the case could be re-rolled.

**{¶45}** However, Judge Russell's May 3 entry (judge's sheet) merely stated, "Court recuses – rerolls." On the other hand, Judge Russell's June 1 nunc pro tunc entry stated, "Based on defense attorney's statements, the court declares a mistrial, recuses, and requests that the case be re-rolled." These are the same exact four elements that the judge discussed on the record in front of the parties at the May 3 trial. The sole purpose of Judge Russell's nunc pro tunc entry was to correctly state that, based on defense counsel's statements, she had declared a mistrial, recused herself, and requested that the case be re-rolled. Just like the nunc pro tunc entry in *Lester*, the facts stated by Judge Russell in her nunc pro tunc entry were "obvious to the court and all the parties." *See Lester,* 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, at ¶ 20. And just like in *Lester*, Judge Russell's nunc pro tunc entry "merely corrected a clerical omission * * * and made the entry reflect what had already happened." *See id.* Importantly, like the entry in *Lester*, Judge Russell's nunc pro tunc entry "affected only the form of the entry and made no substantive changes." *See id.*

**{¶46}** Hare contends that the nunc pro tunc entry "went beyond the state's requested relief" and "supplemented the court's entry with additional findings." First, as I pointed out, the judge's nunc pro tunc entry merely reflected what had already happened and was obvious to the parties, so the entry was not supplemented with any findings. Second, in the state's motion requesting a nunc pro tunc entry, the state noted that Judge Russell "indicated audibly that a mistrial was declared," and set forth Judge Russell's verbal reasoning, as I set forth above. The state requested "an entry

clarifying, formally, that a mistrial was declared, which is consistent with the record of the proceedings." That is exactly what Judge Russell did. She recited the exact same four statements in her judgment entry that she verbally recited at the trial. Contrary to Hare's assertion, there were no "additional findings."

**{¶47}** The majority at paragraph ¶ 13, cites this court's decision in *E.B. III*, 1st Dist. Hamilton No. C-150351, 2016-Ohio-1507, ¶ 6, where we set forth the case's rather confusing procedural history. In that case, the trial court imposed a one-year sentence on an aggravated robbery and a three-year sentence on a firearm specification, but its entry "flipped the sentence: it recited three years for the aggravated robbery and one year for the firearm specification." *E.B. III* at ¶ 4. We affirmed the court's judgment. *In re E.B.*, 1st Dist. Hamilton Nos. C-120650 and C-120651 (Jun. 19, 2013) ("*E.B. I*").

**{¶48}** While the appeal in *E.B. I* was pending, the trial court realized its error and issued a nunc pro tunc entry to correct its sentencing entry to reflect what had actually happened during the disposition hearing—the imposition of a one-year term for aggravated robbery and a three-year term for the specification. *Id.* at ¶ 6. E.B. filed a motion to vacate the judgment, the trial court denied it, and E.B. appealed. *Id.* "We declined to address E.B.'s assignment of error, concluding that the court's nunc pro tunc order—and, consequently his motion requesting relief from that order—was a nullity because the trial court had had no jurisdiction to enter the order while the matter was on appeal." *Id.*, citing *In re E.B.*, 1st Dist. Hamilton No. C-140440 (Mar. 20, 2015) ("*E.B. II*").

**{¶49}** In considering the issue in *E.B. III*, we first noted: "Following our judgment entry in *E.B. II*, the trial court entered a second nunc pro tunc order, again seeking to correct the error in the original sentencing entry." *Id.* at ¶ 7. The trial court used its second nunc pro tunc entry to accomplish the same thing it did with its first

nunc pro tunc entry, which was to correct its sentencing entry to reflect that E.B. was to serve one year for the aggravated robbery and three years for the gun specification. *See E.B. III* at ¶ 6 and 7. We held that the second nunc pro tunc entry was proper because the trial court "did not modify E.B.'s original sentence. Rather, it corrected the entry so that it reflected what had actually happened during the disposition hearing—the court sentenced E.B. to one year for aggravated robbery and three years for the gun specification." *Id.* at ¶ 9.

{¶50} "Because a nunc pro tunc order is an order done 'now for then,' 'by its very nature[,] it applies retrospectively to the judgment it corrects.' " *Id.* at ¶ 10, citing *Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, at ¶ 19. Like the nunc pro tunc entries in *E.B. III*, Judge Russell's June 1 nunc pro tunc entry merely corrected her entry to reflect what had actually happened during the trial. Because the entry was proper, it applied retroactively to the time that she still had authority over the case.

{¶51} In *Doe v. Catholic Diocese*, 158 Ohio App.3d 49, 2004-Ohio-3470, 813 N.E.2d 977 (8th Dist.), the plaintiff appealed the trial court's transfer and reassignment of her case to two different judges, claiming that the orders transferring the case failed to state the reason for the transfers. *Doe* at ¶ 1. She also appealed two nunc pro tunc journal entries, wherein the administrative judge provided reasons for the reassignments and the denial of the plaintiff's motion for relief from judgment. *Id.*

{¶52} The first assigned judge recused herself because defense counsel had an attorney-client relationship with the judge's husband and his law firm. *Id.* at ¶ 3. The administrative judge reassigned the case to a second judge "for good cause." *Id.* When the second judge also recused, the administrative judge's entry reassigning to a third judge stated the transfer was "for good cause." *Id.*

{¶53} The third judge granted the defendant's motion to dismiss, which the plaintiff appealed. *Id.* at ¶ 4. The Eighth District, however, remanded the case to allow a ruling on the plaintiff's Civ.R. 60(B)(5) motion, which she had filed with the administrative judge. *Id.* The administrative judge entered nunc pro tunc entries providing specific reasons for the previous reassignments. *Id.* at ¶ 5. The third judge filed an entry striking the plaintiff's motion. *Id.* The plaintiff appealed the administrative judge's entries and the third judge's order. *Id.* at ¶ 6.

{¶54} On appeal, the plaintiff argued that the administrative judge erred when he issued nunc pro tunc entries providing explanations for the previously entered orders reassigning the case because her appeal had divested him of jurisdiction and because the entries had made substantive changes. *Doe*, 158 Ohio App.3d 49, 2004-Ohio-3470, 813 N.E.2d 977, at ¶ 8.

{¶55} The Eighth District relied on App.R. 9(E) and Civ.R. 60(A), the civil counterpart of Crim.R. 36, that allows a court to correct "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission" at any time. *Id.* at ¶ 11-17. The court noted that, even when a case is pending on appeal, the trial judge "retains jurisdiction to enter nunc pro tunc orders so that the record will conform to what occurred in the trial court." *Id.* at ¶ 18. The court held that the nunc pro tunc entries were properly entered because they did not change the substance of the previous orders and "simply add[ed] additional information concerning what happened in the trial court that necessitated the reassignments." *Id.* at ¶ 19.

{¶56} Just like in *Doe*, where the nunc pro tunc entries added information concerning what happened in the trial court to necessitate the reassignments, Judge Russell's nunc pro tunc entry added information concerning what happened in open

court to necessitate her actions. And who, if not the original trial judge, is in a position to do this? I would therefore hold that Judge Russell's exercise of her judicial power to issue a nunc pro tunc entry was not unauthorized by law.

**{¶57}** Even assuming Judge Russell lacked authority to enter the nunc pro tunc entry, I would further deny the writ because I would hold that Hare has an adequate remedy at law. He simply could ask the new trial judge to strike the entry.

**{¶58}** Finally, I note that there is no indication that Judge Russell has attempted or will attempt to do anything other than correct an entry that she thought was needed to accurately reflect what occurred (even if she was mistaken as to her authority). Thus, there is no reason to prohibit her from acting in the future.

**{¶59}** In short, I would find that the court did not patently lack jurisdiction, that Judge Russell's action was not unauthorized by law, and that Hare has an adequate remedy at law. Writs of prohibition are extraordinary remedies that are to be granted only in limited circumstances and with great caution and restraint. *Ruehlman*, 157 Ohio St.3d 296, 2019-Ohio-2845, 136 N.E.3d 436, at ¶ 6. This is not that rare case where an extraordinary writ should be issued. I would deny Hare's motion for summary judgment and grant Judge Russell's cross-motion for summary judgment, and I would deny the petition for a writ of prohibition.

Please note:

The court has recorded its own entry on the date of the release of this opinion.