[Cite as *Collett v. Sharkey*, 2021-Ohio-2823.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| KATHERN COLLETT, | : | APPEAL NO. C-200446<br>TRIAL NO. A-1902820 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| ROBERT STEVEN SHARKEY, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 13, 2021

*The Law Offices of Blake R. Maislin, LLC*, and *Derrick A. Wyatt*, for Plaintiff-Appellant,

*Ruggerio, Salyer & Haas, LPA,* and *Susan M. Salyer*, for Defendant-Appellee.

**MYERS, Presiding Judge.**

{¶1} Plaintiff-appellant Kathern Collett appeals the trial court's granting of summary judgment in favor of defendant-appellee Robert Steven Sharkey on Collett's complaint for negligence.

{¶2} In a single assignment of error, Collett argues that the trial court's grant of summary judgment was in error. We find her argument to be without merit and affirm the trial court's judgment.

*Factual and Procedural Background*

{¶3} Collett, Sharkey, and Sharkey's former girlfriend Kimberly Winters were in Sharkey's kitchen when Sharkey lifted an ice machine from the countertop. After Collett warned Sharkey that water spilled from the ice machine onto the floor, Collett slipped and fell in the water, sustaining injuries. Collett asserted a negligence claim against Sharkey alleging that he breached his duty of care as a property owner by spilling water on the floor, failing to clean up the spilled water, and failing to warn her about the hazard created by the spilled water.

{¶4} In her deposition, Collett testified that she was sitting at Sharkey's kitchen table about ten feet away from Sharkey when he took the countertop ice machine and emptied it into the sink. Collett said that she saw water coming out of the machine onto a rug in front of the sink, so she told Sharkey that he had spilled some water. According to Collett, after "several minutes," or "ten minutes," she walked to the sink, put something into the sink, then "turned around and walked two feet and fell flat on my back." Collett testified that she heard a squeaking sound from the flip-flops she was wearing "[a]s soon as I stepped off the rug." According to Collett, her feet were on the linoleum floor, not on the rug, when she slipped. When asked if she knew she was stepping on the wet rug, Collett replied, "I assumed he

cleaned it up." When asked how, she testified that she assumed he cleaned up the rug with paper towels, although she did not see him do that.

{¶5} Sharkey's and Winters's testimony differed somewhat from Collett's version of the events that led to her fall. In his deposition, Sharkey testified that Collett was standing behind him when he picked up the ice machine. He said that Collett informed him that water was spilling, so he turned to set the machine back on the counter, and that, within "seconds," Collett fell. Sharkey testified that he did not see water on the floor. He said that he knew that "[w]ater did get on the floor mat" because "the mat was under me when I was holding the ice maker."

{¶6} Winters testified in her deposition that Collett was "real close" to Sharkey as he lifted the machine off the counter, and that, as Sharkey turned around, the machine dripped water. Winters did not recall if there was a rug on the floor. She testified, "And then, you know, look, there's water on the floor. Like, we spoke. Like, oh, it spilled. You know, everyone is talking." According to Winters, Collett's fall occurred "[m]oments" after the spill. When Winters was asked, "Talking less than a minute?," she responded, "You know, I think, but I can't - - it could be two. I really don't know."

{¶7} Sharkey moved for summary judgment. The trial court granted Sharkey's motion after determining that the spilled water posed an open and obvious danger, thus negating any duty owed by Sharkey to Collett.

*Standard of Review*

{¶8} We review a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriately granted when there exists no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only

one reasonable conclusion that is adverse to that party. *State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

*Open and Obvious*

**{¶9}** To succeed on a negligence claim, a plaintiff must establish that (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered injury proximately caused by the defendant's breach of duty. *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 10. In the premises-liability context, the applicable duty is determined by the relationship between the premises owner and the plaintiff. *Id.*

**{¶10}** In this case, the parties agree that Collett was a social guest. The Supreme Court of Ohio has defined the duty owed a social guest:

> A host who invites a social guest to his premises owes the guest the duty (1) to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition.

*Scheibel v. Lipton*, 156 Ohio St. 308, 102 N.E.2d 453 (1951), paragraph three of the syllabus.

**{¶11}** A premises owner's liability can arise from (1) a dynamic or active form of negligence relating to the owner's duty not to injure guests or invitees by negligent activities conducted on the premises, or (2) a static form of negligence relating to the owner's duty to maintain its premises in a reasonably safe condition, including an obligation to warn of latent or hidden defects. *See Simmons v. Am. Pacific Ent., LLC.*, 164 Ohio App.3d 763, 2005-Ohio-6957, 843 N.E.2d 1271, ¶ 20 (10th Dist.). A

4

premises owner's action may become a static condition on the premises, depending on the amount of time elapsing between the action and the plaintiff's injury. *Id.* at ¶ 22.

{**¶12**} Where a hazard is open and obvious, a premises owner owes no duty of care to individuals lawfully on the premises. *Lang* at ¶ 11; *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, syllabus. This is because the open and obvious nature of the hazard itself serves as a sufficient warning. *Ligon v. Winton Woods Park*, 1st Dist. Hamilton No. C-180073, 2019-Ohio-1217, ¶ 9. Individuals entering the premises may reasonably be expected to discover an open and obvious hazard and take appropriate measures to protect themselves. *Lang* at ¶ 11. The open-and-obvious doctrine applies only to static conditions on a premises. *Wulf v. Bravo Brio Restaurant Group, Inc.*, 2019-Ohio-3434, 142 N.E.3d 123, ¶ 23 (12th Dist.). Where the hazard existed prior to the time the plaintiff encounters the hazard, it is a static condition. *Rice v. Kroger*, 6th Dist. Lucas No. L-19-1175, 2020-Ohio-2654, ¶ 6.

{**¶13**} Collett argues that the trial court erred by granting summary judgment based on its conclusion that Sharkey had no duty to warn her of the open and obvious hazard of the spilled water. Pointing to the testimony of Sharkey and Winters, Collett asserts that the open-and-obvious doctrine did not apply because the spilled water was not a static condition. According to Collett, genuine issues of material fact remained as to whether Sharkey breached his duty not to injure her by his actions in spilling the water into her path, i.e., his "active negligence."

{**¶14**} Collett cites our decision in *Asher v. Glenway Real Estate, LLC*, 2019-Ohio-4851, 149 N.E.3d 1035 (1st Dist.), for her proposition that "[i]t is possible for a hazard to be created and observed but there may not be enough time to do anything to avoid it." In *Asher*, the plaintiff fell backwards down a flight of stairs while attempting to enter the rear entrance of a business. *Id.* at ¶ 3. When the plaintiff

tried to pull open the door at the top of the steps, the door opened outwards, and it swung wider than the landing on the top step, such that the plaintiff had to step back to allow the door to fully open. *Id.* at ¶ 4. We held that the hazard encountered by the plaintiff-invitee was not open and obvious because the hazard was not visible or apparent upon first glance, and was not discoverable until she attempted to open the door and realized that it opened outward and extended wider than the landing. *Id.* at ¶ 17. We said, "Once the hazard is discoverable, the invitee has already encountered it." *Id.* Unlike the plaintiff in *Asher*, however, Collett knew of the hazard created by the spilled water and told Sharkey about the spilled water before she encountered it.

{¶15} Collett argues that genuine issues of material fact remain as to when Sharkey spilled the water in relation to her fall. Collett acknowledged in her own testimony that "several minutes" or "ten minutes" after she saw the water spill, she walked to the sink, turned around, and walked two feet before she fell. However, she directs us to Sharkey's testimony and to Winters's testimony that her fall occurred within moments of the spill, to support her assertion that Sharkey spilled the water into her path and she had no time to avoid it. Collett asserts that reasonable minds could conclude that Sharkey's negligent actions created a dynamic condition and that a period of only seconds or moments was not enough time for Sharkey's action of spilling the water on the floor to become a static condition on the premises to which the open-and-obvious doctrine applies.

{¶16} However, even viewing all of the evidence in Collett's favor, it is clear that the spilled water became a static condition before Collett encountered it. Whether or not the water was on the ground for ten minutes or several minutes, as Collett testified, or for "moments" or "seconds" as Winters and Sharkey testified, there was no dispute that Collett saw that the water had spilled and told Sharkey that the water had spilled before she stepped into it. Enough time elapsed after Sharkey's action in spilling the water that Collett had time to inform him of the spill, such that

the spill became a static condition before Collett encountered it. *See Simmons*, 164 Ohio App.3d 763, 2005-Ohio-6957, 843 N.E.2d 1271, at ¶ 22; *Rice*, 6th Dist. Lucas No. L-19-1175, 2020-Ohio-2654, at ¶ 6. Even though Collett recognized and then verbally acknowledged the hazard, she knowingly stepped into the hazard. The open and obvious nature of the spilled water negated any duty by Sharkey to warn Collett of the hazard. *See Armstrong*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at syllabus.

**{¶17}** Because Sharkey owed no duty to Collett, the trial court properly entered summary judgment in favor of Sharkey on Collett's negligence claim. Therefore, we overrule the assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**BERGERON** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its own entry this date.