[Cite as *McClain v. The Drinkery*, 2021-Ohio-4161.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| EMILY MARIE MCCLAIN, | : | APPEAL NO. C-210124 |
| | | TRIAL NO. A-1904049 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| THE DRINKERY, | : | *O P I N I O N.* |
| URBAN SITES CONSTRUCTION, L.L.C., | : | |
| and | : | |
| THE CHRIST HOSPITAL, | : | |
| Defendants, | : | |
| and | : | |
| URBAN SITES PROPERTY MANAGEMENT, L.L.C., | : | |
| and | : | |
| GBG STRATEGIES, L.L.C., | : | |
| Defendants-Appellees. | : | |


Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  November 24, 2021


*Wm. Stewart Mathews II,* for Plaintiff-Appellant,

*Freund, Freeze, & Arnold* and *Nicole A. Mitchell*, for Defendants-Appellees.

**CROUSE, Judge.**

{¶1} Plaintiff-appellant Emily McClain appeals from the trial court's grant of summary judgment in favor of defendants-appellees Urban Sites Property Management, L.L.C., and GBG Strategies, L.L.C., on her personal-injury claim. Defendants Urban Sites Construction, L.L.C., and The Drinkery were dismissed prior to appeal and while the appeal was pending, respectively. Defendant The Christ Hospital did not move for summary judgment and has not appeared on appeal.

{¶2} On September 22, 2017, McClain was out with friends for dinner and drinks. After visiting two other establishments, they entered The Drinkery, a bar located at 1150 Main Street, Cincinnati, Ohio. The Drinkery and the building immediately adjacent to it (1142 Main Street) are owned by GBG Strategies, L.L.C., and managed by Urban Sites Property Management, L.L.C.

{¶3} McClain and her fiancé Alex Sorrel exited from the rear of The Drinkery to an outdoor patio area. Adjacent to the patio was an alcove, accessible by stepping up an approximately six-inch step from the patio. The alcove was not a part of The Drinkery. Rather, it was a part of the building located at 1142 Main Street.

{¶4} In the alcove, stacked vertically and leaning against a wall, were three to four "slabs of pool table slates." The slabs had been placed in the alcove by Urban Sites Construction, L.L.C., sometime after February 2017 while it was renovating the building at 1142 Main Street. There were no signs posted warning of any danger related to the slabs, and there were no barriers erected to keep bar patrons away from the slabs.

{**¶5**}    Exhibit B is a photograph that was filed with McClain's deposition. McClain testified in her deposition that exhibit B depicted the area where the incident occurred and the manner in which the slabs were stacked against the wall on the night in question.



{**¶6**}    McClain testified that she was in the alcove area by the slabs, with Sorrel, for approximately 15-20 minutes. McClain finished her drink and noticed that some drink glasses had been left on top of the slabs by other bar patrons.  She removed the glasses and placed them on the ground next to the slabs, along with her glass.  Standing next to the slabs, she started texting and looking at snapchats on her phone, which was in her left hand. She testified that her right hand, and potentially part of her wrist, was resting on the corner of the top slab.

{¶7}    She testified that she felt the slabs move away from the wall, so she brought her left hand around and squared up on the slabs and attempted to push them back up against the wall. But the slabs were too heavy and they fell onto her left leg, breaking her tibia. She testified that nobody else was close to the slabs when they fell. She testified that she did not know what made the slabs fall, and it could not have been her because she was merely resting her hand on the top right corner of the top slab and was not leaning against the slabs.

{¶8}    The trial court found that the hazard posed by the pool table slabs was an open and obvious danger and granted defendants' motions for summary judgment. McClain argues in one assignment of error that the trial court erred in finding that the hazard posed by the slabs was an open and obvious danger and granting summary judgment in favor of appellees. For the reasons discussed below, we sustain the sole assignment of error.

### Open-and-Obvious Danger

{¶9}    We review a trial court's grant of summary judgment de novo. *Collett v. Sharkey,* 1st Dist. Hamilton No. C-200446, 2021-Ohio-2823, ¶ 8. "Summary judgment is appropriately granted when there exists no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party." *Id.*, citing *State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

{¶10}    To succeed on a negligence claim, a plaintiff must establish "(1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered injury proximately caused by the defendant's breach of

4

duty." *Asher v. Glenway Real Estate, LLC,* 2019-Ohio-4851, 149 N.E.3d 1035, ¶ 14 (1st Dist.), quoting *Patterson v. Adleta, Inc.,* 2018-Ohio-3896, 119 N.E.3d 982, ¶ 7 (1st Dist.). In the premises-liability context, the applicable duty is determined by the relationship between the premises owner and the plaintiff. *Collett* at ¶ 9, citing *Lang v. Holly Hill Motel, Inc.,* 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 10.

{¶11} A business owner owes its invitees a duty to maintain the premises in a reasonably safe condition. *Asher* at ¶ 15. This includes a duty to warn of latent or hidden dangers. *Duell v. City of Cincinnati*, 2018-Ohio-4400, 122 N.E.3d 640, ¶ 5 (1st Dist.). But the open-and-obvious doctrine serves as an exception to the general rule of premises liability. "Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Asher* at ¶ 15, quoting *Lang* at ¶ 11, quoting *Armstrong v. Best Buy Co., Inc.,* 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, syllabus. The rationale underlying this doctrine is "that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.,* 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992).

{¶12} An open-and-obvious danger is one that is not "hidden, concealed from view, or undiscoverable upon ordinary inspection." *Asher* at ¶ 15, quoting *Esterman v. Speedway LLC,* 1st Dist. Hamilton No. C-140287, 2015-Ohio-659, ¶ 7. "Typically, whether a danger is open and obvious is a question of law." *Asher* at ¶ 15. But where reasonable minds could reach different conclusions about the obviousness of the risk, the issue is for the jury to decide. *Wright v. Village of Williamsport*, 2019-Ohio-2682, 140 N.E.3d 1, ¶ 31 (4th Dist.).

{**¶13**} It is undisputed that McClain noticed the slabs before they fell on her. But she argues she had no way of knowing the slabs were dangerous until they fell on her. Therefore, the issue is the obviousness of the danger posed by the slabs, i.e., their weight and potential to fall. The degree to which a hazard is observable " 'depends upon the particular circumstances surrounding the hazard,' and is 'extremely fact-specific.' " *Andler v. Clear Channel Broadcasting, Inc.,* 670 F.3d 717, 725 (6th Cir.2012), quoting *Lykins v. Fun Spot Trampolines*, 172 Ohio App.3d 226, 874 N.E.2d 811 (12th Dist.2007), and *Henry v. Dollar Gen. Store*, 2d Dist. Greene No. 2002-CA-47, 2003-Ohio-206, ¶ 14.

{**¶14**} The present case is comparable to cases involving falling store merchandise. Several Ohio courts have addressed whether such hazards are an open-and-obvious danger, but there is no consensus on the issue. *Weber v. Menard, Inc.,* S.D.Ohio No. 3:13-CV-229, 2014 WL 4965940, *4 (Oct. 3, 2014).

{**¶15**} In *Weber*, the plaintiff was injured when a part from a stovepipe fell from a shelf and hit his hand. *Id.* at *1. The stovepipe parts were loosely stacked on top of each other in wire bins on the shelves. *Id.* Weber claimed that he pulled a piece off a lower shelf and was looking at it when a piece fell from a different, higher shelf. *Id.* The store manager testified that the piece that fell came from the same shelf and bin from which Weber had removed a piece of pipe. *Id.* at *5.

{**¶16**} The court held, "Summary judgment is inappropriate in Weber's case, particularly because there is conflicting testimony about what happened immediately before the horizontal vent cap fell." *Id.*

> If Weber was, in fact, rummaging around in the horizontal vent cap bin
> when the part fell, it is more likely that the danger will be deemed open

and obvious. But if he did not touch anything in that particular bin, this becomes a much closer question. *Even if the parts were precariously stacked, one would not necessarily expect one of them to fall unless someone did something to dislodge it.*

(Emphasis added.) *Id.*

{¶17} In *Hernandez-Butler v. Ikea U.S. E., LLC*, 435 F.Supp.3d 816, 820 (S.D.Ohio 2020), the plaintiff was injured when a box containing a sofa fell on her. The box was stored next to two other identical sofa boxes. *Id.* at 819. Each box was 86x36x18 inches, weighed 150 pounds, and was stored in a "vertical fashion," so that they were 86 inches tall. *Id.* at 819-820. The plaintiff had just maneuvered the middle box onto her rolling cart when the box to the left fell on top of her. *Id.* at 820.

{¶18} The sofa boxes were plainly visible and the area surrounding the boxes was clutter free and well lit. *Id.* at 823. Also, the plaintiff knew the dimensions and weight of the sofa box prior to entering the store. *Id.* at 819. IKEA argued the boxes presented an open-and-obvious danger. *Id.* at 823.

{¶19} The court found,

The principal problem with that argument is that IKEA appears to conflate two separate issues. The question is not whether *the boxes* were open and obvious, but rather whether *the hazard* that the boxes presented, when stored in a vertical position, on their shortest, narrowest side, and facing outward, was open and obvious.

(Emphasis sic.) *Id.* at 824. "[I]t is not clear that a reasonable customer, even if the customer could clearly see how the box was positioned, would appreciate the magnitude of the tipping risk that the box presented." *Id.* The court found that a

"generalized awareness" that the box was not in its most stable position was insufficient to put the plaintiff on notice of the risk of tipping. *Id.*

{¶**20**} Some courts have found that falling merchandise can constitute an open-and-obvious hazard. In *Bonner v. Glassman*, 8th Dist. Cuyahoga No. 96924, 2012-Ohio-86, ¶ 6, the plaintiff was injured after cases of bottled water fell on him. The cases had been placed in three stacks next to each other. *Id.* at ¶ 5. Two of the stacks were "very high" and were stacked above Bonner's head. *Id.* Therefore, he decided to grab a case from the "lower" stack. *Id.* at ¶ 6. As he was placing the case in his cart, some of the cases of water from the other two stacks fell on him. *Id.* The court held, "Disturbing heavy cases that were stacked 'so high' constituted an obvious danger." *Id.* at ¶ 29; c*ontrast Morrow v. Wal-Mart Stores E., LP*, S.D.Ohio No. 1:20-CV-162, 2021 WL 1140245, *7, 9 (Mar. 25, 2021) (where the plaintiff was injured by a falling case of bottled water, the court held that the hazard was not open and obvious, despite the fact the plaintiff recognized the cases were heavy and stacked "dangerously").

{¶**21**} In *McGee v. Lowe's Home Ctrs.,* 7th Dist. Jefferson No. 06 JE 26, 2007-Ohio-4981, ¶ 16-17, the court found the hazard was open and obvious because the precariousness of the overhead vinyl-sheet flooring display was not hidden and the plaintiff was looking through the display by pushing flooring side to side—"there always remains a possibility that too much fumbling around through merchandise can create an unstable situation." *See Hupp v. Meijer Stores Ltd. Partnerships*, 5th Dist. Delaware No. 05 CE 07 0047, 2006-Ohio-2051, ¶ 19 (finding that a reasonable person would have appreciated the danger inherent in removing a rug from the display shelf).

{¶22} Taking the evidence in the light most favorable to McClain, she was merely resting her hand on the top right corner of the top slab and was not leaning against the slabs. The facts of this case are unlike a customer "rummaging" around a precarious merchandise display.

{¶23} Moreover, it is unclear whether the slabs' weight and potential to fall would have been observable by a reasonable person through ordinary inspection. The slabs were angled against the wall in a manner meant to keep them from falling. Prior to the fall, the slabs had remained stationary for approximately 15-20 minutes while McClain and Sorrel were in the alcove. It was reasonable for McClain to have believed that the slabs would not fall over on top of her despite placing her hand on the front of the top slab. *See Weber,* S.D.Ohio No. 3:13-CV-229, 2014 WL 4965940, at *5 ("Even if the parts were precariously stacked, one would not necessarily expect one of them to fall unless someone did something to dislodge it.").

{¶24} Because reasonable minds could differ as to whether the hazard was open and obvious, the issue is for a jury to decide.

## *Conclusion*

{¶25} For the foregoing reasons, the sole assignment of error is sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion and the law.

Judgment reversed and cause remanded.

MYERS, P.J., and BOCK, J., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.