[Cite as *Lambert v. Up Cincinnati Race, L.L.C.*, 2022-Ohio-4699.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ROGER D. LAMBERT, | : | APPEAL NO. C-220143<br>TRIAL NO.  A-2003620 |
| Plaintiff-Appellant, | : | |
| | : | *O P I N I O N.* |
| vs. | : | |
| | : | |
| UP CINCINNATI RACE, LLC, d.b.a.<br>THE BIRDCAGE, | : | |
| | : | |
| Defendant-Appellee, | : | |
| and | : | |
| ANTHEM INSURANCE COMPANIES,<br>INC., d.b.a. COMMUNITY<br>INSURANCE CO., | : | |
| | : | |
| Defendant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 28, 2022

*Freking Myers & Reul LLC* and *Austin H. LiPuma*, for Plaintiff-Appellant,

*Lock Gordon Law Group, LLC, James H. Gordon* and *Jeremy R. Kopp*, for Defendant-Appellee.

**CROUSE, Judge.**

{¶1}　Plaintiff-appellant Roger D. Lambert appeals the trial court's order granting summary judgment in favor of defendant-appellee Up Cincinnati Race, LLC, d.b.a. The Birdcage ("The Birdcage"). Lambert sued The Birdcage, a bar located in Cincinnati, Ohio, as a result of injuries he sustained when he tripped and fell at the threshold of a patio entrance into The Birdcage in January 2020. For the reasons set forth below, we affirm the trial court's decision to grant summary judgment in favor of The Birdcage.

## I. Procedural History

{¶2}　In November 2020, Lambert filed his first amended complaint in the Hamilton County Court of Common Pleas against The Birdcage and Lambert's insurance carrier, Community Insurance Company, d.b.a. Anthem Blue Cross/Blue Shield ("CIC").[1] Following discovery, The Birdcage filed its motion for summary judgment in November 2021. After a hearing on the motion, the trial court granted The Birdcage's motion for summary judgment in March 2022. This timely appeal followed.

## II. Factual History

{¶3}　On the evening of January 10, 2020, Lambert was out for a night on the town, intending to follow his routine path of visiting a series of bars in Cincinnati. Lambert had visited one bar and consumed a mixed drink and three glasses of wine during the two hours prior to heading to The Birdcage. Upon his arrival at The

---

[1] In Lambert's first amended complaint, the insurance company was listed as "Anthem Insurance Companies, Inc. dba Community Insurance Co." In its answer, CIC gave "Community Insurance Company d.b.a. Anthem Blue Cross/Blue Shield" as its correct name. CIC filed a crossclaim against The Birdcage for its own losses stemming from Lambert's injury, in the form of payments of Lambert's medical bills. CIC also filed a counterclaim against Lambert to recover its payments. CIC's claims only asserted a subrogation right of recovery to any award that Lambert might win.

Birdcage, Lambert entered the bar through its Court Street entrance. Lambert ordered a glass of chardonnay from the bar and took his drink out through the Race Street door to the bar's patio area. In the light rain, Lambert sat on the patio under his umbrella, and finished his drink. Lambert took his empty wine glass back into the bar and ordered another round. Lambert returned with his second glass of chardonnay from The Birdcage to the Race Street patio. After finishing his drink, Lambert reentered The Birdcage through the patio door, carrying the empty wine glass while closing his umbrella. On crossing the threshold of the door, Lambert tripped over a small riser at the doorway and fell to the ground, dislocating his shoulder.

{¶4}   After Lambert's fall, an employee of The Birdcage offered to call emergency medical services ("EMS") on his behalf. Lambert told the staff at The Birdcage that his fall was not their fault. Eventually, EMS arrived and took Lambert to the emergency room.

{¶5}   Two days later, after receiving medical treatment, Lambert returned to The Birdcage to investigate the cause of his fall. Initially, Lambert believed he had slipped because of the rain. When Lambert saw the riser at the Race Street door, he realized instead that he must have tripped over the riser.

{¶6}   Lambert was a regular at The Birdcage and had visited the bar many times since it opened in November 2018. Lambert knew the staff, and at least some of the employees knew him by name. Lambert would occasionally go out on the patio, particularly when it wasn't too cold or crowded. The Race Street door where Lambert tripped was the only way to enter onto and exit from that patio. Lambert traversed the riser safely no fewer than three times the evening he fell: first, when he exited from the bar onto the patio; second, when he reentered the bar from the patio; and third, when

3

he again exited from the bar onto the patio. Lambert then tripped on his fourth pass over the riser.

### III. Analysis

{¶7} In his sole assignment of error, Lambert argues that the trial court erred in granting summary judgment in favor of The Birdcage on Lambert's claims for negligence and negligence per se.

{¶8} We review a trial court's grant of summary judgment de novo. *Collett v. Sharkey*, 1st Dist. Hamilton No. C-200446, 2021-Ohio-2823, ¶ 8. "Summary judgment is appropriately granted when there exists no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party." *Id.*, citing *State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

### A. Negligence

{¶9} Generally, to recover in negligence, a plaintiff must prove that (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; and (3) the defendant's breach proximately caused the plaintiff's injury. *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565, 697 N.E.2d 198 (1998). The source of the duty may be the common law, a legislative enactment, or the particular facts and circumstances of the case. *Id.*

{¶10} A business owner owes its invitees a duty to maintain the premises in a reasonably safe condition. *Asher v. Glenway Real Estate, LLC*, 2019-Ohio-4851, 149 N.E.3d 1035, ¶ 15 (1st Dist.). This includes a duty to warn of latent or hidden dangers. *Duell v. City of Cincinnati*, 2018-Ohio-4400, 122 N.E.3d 640, ¶ 5 (1st Dist.).

4

{**¶11**}   There is no dispute that Lambert was a business invitee of The Birdcage, and therefore, The Birdcage owed Lambert a general duty to keep the premises in a reasonably safe condition. However, The Birdcage argues that this general duty did not include the duty to warn Lambert of the potential hazard at the threshold where Lambert tripped because the condition was open and obvious. Although Lambert disputes that the hazard posed by the threshold of the patio door was open and obvious, Lambert also argues that attendant circumstances reimpose The Birdcage's duty to warn patrons of the hazard at the threshold.

### 1. The Open-and-Obvious Doctrine

{**¶12**}   The open-and-obvious doctrine serves as an exception to the general rule of premises liability. " 'Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises.' " *Asher* at ¶ 15, quoting *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 11, quoting *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, syllabus. A danger is open and obvious when it is not " 'hidden, concealed from view, or undiscoverable upon ordinary inspection.' " *Id.*, quoting *Esterman v. Speedway LLC*, 1st Dist. Hamilton No. C-140287, 2015-Ohio-659, ¶ 7, quoting *Thompson v. Ohio State Univ. Physicians, Inc.*, 10th Dist. Franklin No. 10AP-612, 2011-Ohio-2270, ¶ 12. The rationale underlying this doctrine is "that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992).

{**¶13**}   The question of whether a hazard is open and obvious is typically a

question of law. *Asher*, 2019-Ohio-4851, 149 N.E.3d 1035, at ¶ 15. Such a determination is made using an objective standard, not based on the plaintiff's subjective awareness. *See Vaughn v. Firehouse Grill, LLC*, 1st Dist. Hamilton No. C-160502, 2017-Ohio-6967, ¶ 11; *Esterman* at ¶ 7. Courts routinely determine that a hazard is open and obvious as a matter of law. *See, e.g., McLaughlin v. Andy's Coin Laundries, LLC*, 2018-Ohio-1798, 112 N.E.3d 57, ¶ 15 (1st Dist.).

{¶14} Lambert contends that this doorway represents a "Goldilocks" hazard: one that is so slight and inconspicuous as to go unnoticed, but so hazardous as to be an inevitable source of injury. Such logic runs counter to the Ohio Supreme Court's decision in *Raflo v. Losantiville Country Club*, 34 Ohio St.2d 1, 295 N.E.2d 202 (1973). In *Raflo*, a wedding guest tripped while exiting from the venue by way of a single step immediately outside the door, having previously entered by the same doorway. *Id.* at 2. The step was nine-and-one-half-inches high, despite the relevant building code prohibiting such steps from being more than seven-and-one-half-inches in height. *Id.* "[W]hen one successfully traverses a step, even if of a statutorily proscribed elevation, upon entering a building, he cannot take the position that it was at that time so insubstantial as to go unnoticed, but became unreasonably dangerous, hence actionable, when injuries were occasioned by it upon exiting shortly thereafter." *McGowan v. St. Antoninus Church*, 1st Dist. Hamilton No. C-000488, 2001 Ohio App. LEXIS 1610, 7 (Apr. 6, 2001), citing *Raflo* at 4.

{¶15} Once a person has successfully traversed an open-and-obvious condition and encountered the danger thereby presented, that person is on notice of the dangerous condition. Such a person cannot later claim ignorance of the condition after injury has occurred. *Accord Early v. Damon's Restaurant*, 10th Dist. Franklin

No. 05AP-1342, 2006-Ohio-3311, ¶ 14 ("An invitee cannot minimize the effect of the open and obvious doctrine by contending a far different and far more dangerous situation existed upon leaving an area when the alleged defect, unchanged while she was on the premises, was visible at the time she entered."); *Olivier v. Leaf & Vine*, 2d Dist. Miami No. 2004 CA 35, 2005-Ohio-1910, ¶ 42 (finding the condition was open and obvious because plaintiff was necessarily on notice of the single step up to a raised seating area due to her prior use); *Greenwald v. Mapleside Farms, Inc.*, 9th Dist. Medina No. 03CA0067-M, 2004-Ohio-111, ¶ 8-10 (affirming summary judgment in favor of defendant where plaintiff tripped on a curb after encountering it previously that day); *Reinhardt v. Cedar Point, Inc.*, 6th Dist. Erie No. E-91-13, 1991 Ohio App. LEXIS 5255, 7 (Nov. 1, 1991) (finding defendant owed no duty to plaintiff where plaintiff "traversed the stairs upon [defendant]'s property less than ninety minutes prior to her falling on these same steps" and therefore "had knowledge of the existence of the stairs."); *Lajoie v. Maumee River Yacht Club*, 6th Dist. Lucas No. L-89-014, 1990 Ohio App. LEXIS 312, 4 (Feb. 2, 1990) (finding that defendant yacht club was not liable for wrongful death where the decedent was held to have knowledge of conditions at the site because he was a long-time member of the club and had traversed the area at least twice the day of the accident).

{¶16} Lambert tries to avoid the effect of his prior usage by reference to our holding in *Asher*. In *Asher*, we held that the defective condition of a doorway at the top of a set of stairs was not open and obvious, despite the plaintiff's prior use of the doorway. *Asher*, 2019-Ohio-4851, 149 N.E.3d 1035, at ¶ 16-17. In that case, however, the hazard was not the door itself, but the way that the door swung open over the top landing of the steps. *Id.* A person could not observe and appreciate the hazard posed

by the way the door opened until after opening the door and thereby encountering the dangerous condition. *Id.* However, Asher testified that on every previous occasion when she had traversed the dangerous doorway, someone else had serendipitously held the door open for her. *Id.* at ¶ 16. Thus, although she had traversed the doorway on multiple prior occasions, she had never actually encountered the hazardous condition prior to her injury. *Id.* at ¶ 17. The instant case is distinguishable: the condition of the riser at The Birdcage did not change during use. The potential danger posed to Lambert was the same each time he encountered the riser, and therefore, he had already encountered and overcome the precise hazard at issue. Thus, he was on notice of the existence of the riser.

{**¶17**} We similarly distinguish *McClain v. The Drinkery*, 2021-Ohio-4161, 180 N.E.3d 1254 (1st Dist.) (holding that, although the pool table slabs that caused the plaintiff's injuries were clearly visible, the nature of the danger they posed was not apparent), and *Holl v. Montrose, Inc.*, 82 Ohio App.3d 644, 647, 612 N.E.2d 1288 (9th Dist.1992) (holding that awareness of a dangerous gap near the stairs previously traversed by the plaintiff was not necessary to the successful use of the stairs). In each of those cases, the specific nature of the danger posed was not readily apparent, and thus the hazard was not open and obvious.

{**¶18**} The trial court properly found the riser at the doorway to The Birdcage to be an open-and-obvious danger. The riser was not hidden or concealed. The nature of the risk, that one might trip over it, was immediately apparent on ordinary inspection. The obvious nature of the hazard was confirmed when Lambert visited the bar two days after his injury, saw the riser at the doorway, and readily concluded that he must have tripped over that riser. No special circumstances needed to coincide with

the observation of the riser to see that it was a potential trip hazard. Because the hazard posed by the riser was open and obvious, The Birdcage owed Lambert no duty to warn him of the potential danger.

{¶19} Nevertheless, Lambert argues that there remain genuine issues of material fact that cannot be resolved on summary judgment. Lambert asserts that The Birdcage violated a number of Ohio Building Code and Cincinnati Building Code provisions. These violations, Lambert argues, conclusively raise genuine issues of material fact that cannot be resolved by summary judgment, as this court held in *Christen v. Don Vonderhaar Mkt. & Catering, Inc.*, 1st Dist. Hamilton No. C-050125, 2006-Ohio-715.

{¶20} To the extent that *Christen* held that building code violations preclude summary judgment, that decision was abrogated by the Supreme Court in *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 21. If a hazard is open and obvious, there is no duty to warn of the hazard, obviating the duty component of negligence irrespective of a building code violation. *See Vaughn v. Firehouse Grill, LLC*, 1st Dist. Hamilton No. C-160502, 2017-Ohio-6967, ¶ 15, citing *Lang* at syllabus. Even where a hazard violates an applicable building code, unless the plaintiff can properly invoke negligence per se, the defendant may still raise any available defense to negligence, including the open-and-obvious doctrine. *Lang* at ¶ 21.

{¶21} Building code violations may be evidence of negligence. *Asher*, 2019-Ohio-4851, 149 N.E.3d 1035, at ¶ 25, citing *Mann v. Northgate Investors, L.L.C.*, 138 Ohio St.3d 175, 2014-Ohio-455, 5 N.E.3d 594, ¶ 29. However, the question of whether the riser constitutes an open-and-obvious hazard is a threshold question that

must be addressed before consideration of negligence based on the building codes. Because we have determined that the riser constitutes an open-and-obvious hazard, whether The Birdcage may have violated applicable building codes is irrelevant to determining whether The Birdcage may have been negligent towards Lambert.

## 2. Attendant Circumstances

{¶22} Even where a hazard may be open and obvious, attendant circumstances that reduce the degree of ordinary care that a person will take for their own safety may create a genuine issue of material fact that will preclude summary judgment. *Esterman*, 1st Dist. Hamilton No. C-140287, 2015-Ohio-659, at ¶ 11. " 'Attendant circumstances' reduce the degree of care an ordinary person exercises and 'must, taken together, (1) divert the attention of the pedestrian, (2) significantly enhance the danger of the defect, and (3) contribute to the fall.' " *Id.*, quoting *Shepherd v. City of Cincinnati*, 168 Ohio App.3d 444, 2006-Ohio-4286, 860 N.E.2d 808, ¶ 31 (1st Dist.). Attendant circumstances must pose a "significant distraction," and cannot include "regularly encountered, ordinary, or common circumstances." *Id.*, quoting *Haller v. Meijer, Inc.*, 10th Dist. Franklin No. 11AP-290, 2012-Ohio-670, ¶ 10. Furthermore, "attendant circumstances do not include a person's activity at the time of a fall unless the person's attention was diverted by 'an unusual circumstance of the property owner's own making.' " *Id.*, quoting *McConnell v. Margello*, 10th Dist. Franklin No. 06AP-1235, 2007-Ohio-4860, ¶ 10.

{¶23} Lambert argues that attendant circumstances prevented him from perceiving the potential danger at the threshold of the doorway. In particular, Lambert claims as attendant circumstances: (1) the darkness of the evening hour and poor illumination of the doorway; (2) the light rain falling at the time; and (3) that he was

entering the bar while simultaneously carrying an empty wine glass and closing an umbrella.

**{¶24}** Generally, darkness itself is an open-and-obvious condition, not an attendant circumstance, which should increase, not decrease, the care that a reasonable person takes for their own safety. *See Esterman* at ¶ 13, citing *Shipman v. Papa John's*, 3d Dist. Shelby No. 17-14-17, 2014-Ohio-5092, ¶ 30-31.

**{¶25}** Lambert does not describe precisely how the rain obscured his ability to perceive and appreciate the degree of hazard posed by the step. Regardless of the nature of rain as an attendant circumstance, we observe that light rain is surely a "regularly encountered, ordinary, or common" occurrence. Even if the rain somehow diverted Lambert's attention, it was not created by The Birdcage. Thus, any diversion the rain might have caused to Lambert's attention cannot be charged against The Birdcage as an attendant circumstance.

**{¶26}** Finally, Lambert claims that his attention was diverted from safely entering the doorway because he was holding an empty wine glass and closing an umbrella. Attendant circumstances "do not include a person's activity at the time of a fall unless the person's attention was diverted by 'an unusual circumstance of the property owner's own making.' " *Esterman* at ¶ 11, quoting *McConnell*, 10th Dist. Franklin No. 06AP-1235, 2007-Ohio-4860, at ¶ 10. Lambert chose to carry both the wine glass and the umbrella while maneuvering through the doorway and he chose to close his umbrella at the same time. Although the wine glass was the property of The Birdcage, it was Lambert who brought the glass outside and brought it with him back inside. These activities may well have obscured the danger posed by the riser or inhibited Lambert's ability to exercise due care for his own safety. However, these are

circumstances of Lambert's own making. As such, they cannot be attendant circumstances that mitigate the open-and-obvious nature of the doorway.

{¶27} The riser that caused Lambert's fall was open and obvious. There were no attendant circumstances that obscured the nature of the danger posed. As a result, The Birdcage owed Lambert no duty to warn of the danger. The trial court did not err by granting The Birdcage summary judgment on Lambert's claim of negligence.

### B. Negligence Per Se

{¶28} In addition to his claim of negligence, Lambert also asserts a claim of negligence per se. Lambert points to a number of provisions of Title XI of the Cincinnati Municipal Code that he claims The Birdcage violated. Chapters 1101 through 1119 of Title XI make up the Cincinnati Building Code ("CBC"). On appeal, Lambert focuses our attention on three specific code provisions: Cincinnati Municipal Code 1119-03.3, 1119-07.2, and 1119-04.2.

{¶29} Cincinnati Municipal Code 1119-03.3, entitled "Building structure," requires that "[t]he interior and exterior of a structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety or welfare." Cincinnati Municipal Code 1119-07.2, entitled "Means of egress," provides that, "[s]afe, continuous and unobstructed means of egress shall be provided from the interior of a structure to a public way." Cincinnati Municipal Code 1119-04.2, entitled "Required illumination," specifies:

> Every common hall and stairway required as a means of egress, shall be lighted at all times with at least a 60 watt standard incandescent bulb or equivalent for each 200 square feet of floor area, provided that the spacing

between the lights shall not be greater than 30 feet. Every exterior stairway, if required as a means of egress, shall be illuminated with a minimum of one foot candle at floors, landings and treads.

Because these code provisions were enacted by the Cincinnati City Council by ordinance, each of them constitutes a legislative enactment.

{¶30} The open-and-obvious defense negates the element of duty where the source of that duty is the common-law duty of reasonable care that a property owner owes to business invitees. *See Lattimore v. K & A Mkt., Inc.*, 1st Dist. Hamilton No. C-150753, 2016-Ohio-5295, ¶ 9. Where the source of the duty is a legislative enactment, failure to perform the duty is negligence per se. *Chambers*, 82 Ohio St.3d at 565, 697 N.E.2d 198. In a case of negligence per se, the open-and-obvious defense is unavailable. *Mann*, 138 Ohio St.3d 175, 2014-Ohio-455, 5 N.E.3d 594, at ¶ 24.

{¶31} However, in order for a legislative enactment to state a duty for the purposes of negligence per se, that enactment must "set[] forth a specific and definite standard of care." *Asher*, 2019-Ohio-4851, 149 N.E.3d 1035, at ¶ 25, quoting *Mann* at ¶ 29. In *Asher*, we assessed two provisions of the CBC at issue in a negligence per se claim, including Cincinnati Municipal Code 1119.03-3, on which Lambert relies. *Id.* at ¶ 26-27. At that time, we assumed without deciding that the Cincinnati Municipal Code could provide the basis of a negligence-per-se claim. *Id.* at ¶ 27.

{¶32} We previously held that Cincinnati Municipal Code 1119-03.3 provides only a "general, abstract, description of a duty" and is therefore insufficiently "specific and definite" to set forth a duty for purposes of negligence per se. *Id.* Cincinnati Municipal Code 1119-07.2 likewise provides only a "general, abstract, description of a

duty," and does not establish the sort of specific and definite standard of care necessary to constitute negligence per se.

{¶33} Cincinnati Municipal Code 1119-04.2, however, does provide specific, definite standards for compliance. That section requires, for example, certain wattage lightbulbs, maximum spacing for light placement, and a specified level of illumination for egress stairs.

{¶34} On summary judgment, the moving party has the initial burden to inform the court of the basis for its motion and to demonstrate the absence of any genuine issues of material fact. *Blue Ash Auto Body, Inc. v. Frank*, 2022-Ohio-1292, 190 N.E.3d 1180, ¶ 10 (1st Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). "Once the moving party has met its burden, the nonmoving party has a reciprocal burden to set forth specific evidentiary facts showing the existence of a genuine issue for trial." *Id.* However, "conclusory allegations" and "self-serving interpretations of the evidence presented" are insufficient to survive summary judgment. *Id.*

{¶35} Lambert offers no evidence to show how The Birdcage failed to meet the standard set forth in Cincinnati Municipal Code 1119-04.2. Lambert emphasizes that no lighting directly lit the riser and that the area around the doorway was generally poorly lit. Lambert, however, offers no information regarding placement of lightbulbs in the area, nor any measurement of the illumination of the riser. The Birdcage correctly points out that Lambert has offered no specific facts to establish a violation of any municipal code provision. Conclusory statements and general allegations that the area was poorly lit are not competent evidence sufficient to create a genuine issue of material fact as to a violation of the specific requirements of Cincinnati Municipal

Code 1119-04.2.

{¶36} Assuming that provisions of the Cincinnati Municipal Code could form the basis for a negligence-per-se claim, Cincinnati Municipal Code 1119-03.3 and 1119-07.2 do not set forth a specific and definite standard that can be used to support such a claim. Lambert has failed to present any competent evidence of a violation of Cincinnati Municipal Code 1119-04.2. Accordingly, the trial court did not err in granting The Birdcage's motion for summary judgment as to Lambert's claim of negligence per se.

### IV. Conclusion

{¶37} For the foregoing reasons, we overrule Lambert's assignment of error. We affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON, P.J.**, and **WINKLER, J.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.